OPINION
Plaintiff-appellant, Helen Harger appeals from a judgment rendered by the Columbiana County Common Pleas Court, sustaining motions for summary judgment filed by defendants-appellees, the Vista Centre, Dr. Skinner and Main Medical Family Practice ("Dr. Skinner"), and the Cleveland Clinic Foundation ("the Clinic"). For the following reasons, the trial court's judgment is affirmed in part, reversed in part and remanded.
 STATEMENT OF FACTS
On September 13, 1997, appellant's husband ("decedent") was admitted to the Cleveland Clinic. He was 82 years old and had prior health problems. He was diagnosed as having chronic inflammatory demyelinating polyneuropathy ("CIDP"), a chronic and progressive neurological disorder. While at the Clinic, decedent was under the care of Dr. Sahgal. Dr. Sahgal left the country, entrusting Dr. Browning with decedent's care. Dr. Browning treated decedent for two months. Decedent responded well to the treatment. Dr. Browning then arranged for decedent's release.
On November 13, 1997, decedent was transferred to the Vista Centre which is an extended rehabilitative care facility. On November 15, 1997, Dr. Skinner, the Vista Centre's medical director, was assigned to decedent's care. On December 2, 1997, Dr. Skinner diagnosed decedent as having a urinary tract infection. He prescribed Cipro, an antibiotic used to treat such infections.
The next day, decedent went to the Clinic. He was diagnosed with aspiration pneumonia and was readmitted. He later developed multi-system organ failure and died on January 8, 1998.
Appellant filed this lawsuit alleging negligence and medical malpractice. After her first expert witness withdrew from the case, she produced Dr. Giordano as her expert witness. Dr. Giordano prepared two reports. Appellees each filed motions for summary judgment. Dr. Giordano then submitted an affidavit. The trial court overruled appellees' motions for summary judgment, stating that Dr. Giordano's affidavit established a genuine issue of material fact. The trial court went on to note that there was a delay in disclosing appellant's expert witness. The trial court thus concluded that appellees were prejudiced. The trial date was continued so that appellees would have the opportunity to depose Dr. Giordano.
After Dr. Giordano's deposition, appellees filed renewed motions for summary judgment. The trial court sustained appellees' motions. It reasoned that Dr. Giordano's deposition contradicted his affidavit. While the trial court believed that the affidavit established genuine issues of material fact, it concluded that the deposition did not. This appeal followed.
 ASSIGNMENTS OF ERROR
Appellant sets forth two assignments of error on appeal. Both assignments of error have a common basis in law and fact and will, therefore, be discussed together. They allege respectively:
 "THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT TO APPELLEES WHEN GENUINE ISSUES OF MATERIAL FACT EXISTS."
 "THE TRIAL COURT ERRED IN MAKING CREDIBILITY JUDGMENTS AND WEIGHING THE EVIDENCE IN RULING ON MOTIONS FOR SUMMARY JUDGMENT."
 STANDARD OF REVIEW
We review the trial court's grant of summary judgment de novo.Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm (1995),73 Ohio St.3d 107, 108. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue of material fact remains to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears that reasonable minds can only come to a conclusion that is adverse to the nonmovant. Welco Indus., Inc. v. Allied Cos. (1993),67 Ohio St.3d 344, 346. A trial court should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party. Id. Nevertheless, summary judgment is appropriate where the nonmovant fails to produce evidence demonstrating that a genuine issue of material fact exists. Id.
The movant has the initial burden of informing the trial court of the basis for its summary judgment motion by identifying the portions of the record that demonstrate the absence of a genuine issue for trial. Dresherv. Burt (1996), 75 Ohio St.3d 280, 293. The burden then shifts to the nonmovant to set forth specific facts showing that there is a genuine issue for trial in that reasonable minds could reach different conclusions. Id. To meet these burdens, the parties must point to the proper supporting evidence. This evidence consists of pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ.R. 56(C).
Appellant argues that a genuine issue of material fact exists. In support of this argument, appellant focuses on Dr. Giordano's affidavit. Appellant notes that Dr. Giordano pointed to specific instances in which each of the appellees lapsed in their duty to provide decedent with reasonable medical care. He claimed that, in his opinion, decedent would not have contracted aspiration pneumonia if the care given at the Vista Centre had been reasonable and if the Vista Centre would have continued decedent's physical therapy as prescribed by Dr. Sahgal. He also stated that Dr. Sahgal and the Clinic did not meet the standard of care because they failed to monitor decedent's progress at the Vista Centre, despite a notation in the records that a follow-up was to be conducted. He further stated, "it is my opinion within a reasonable degree of medical certainty that a causal relationship exists between the sundry aforesaid breaches of the standard of medical care by Dr. Skinner, Vista Centre and the Cleveland Clinic and the premature death of Horace N. Harger." (Giordano Aff. 2).
Appellees focus on the deposition testimony provided by Dr. Giordano. They claim that his deposition testimony shows that there is no dispute of material facts and that they were entitled to judgment as a matter of law.
Appellant concedes that Dr. Giordano's deposition appears to conflict with his affidavit. She argues, however, that the contradiction was created by appellees through their clever cross-examination tactics. During the discovery deposition, appellees questioned Dr. Giordano for more than five hours. They asked leading questions that pigeonholed his responses to suit their needs. We share appellant's concern that such testimony frequently elicited without the benefit of examination by the other party, is often suspect relative to resolving factual disputes for the purpose of summary judgment. Its use, however, is not prohibited. Moreover, it must be noted that appellant was not without recourse. Her counsel had the opportunity to clarify Dr. Giordano's deposition testimony several ways. Appellant's counsel could have examined Dr. Giordano when appellees were through with their cross-examination. See Civ.R. 30(C). Alternatively, appellant's counsel could have filed a subsequent affidavit. Appellant's counsel did neither. Nonetheless, we find that the deposition testimony did not entirely negate the statements made in the affidavit.
 LAW AND ANALYSIS
In Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, syllabus, the Ohio Supreme Court held:
 "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things."
A plaintiff is generally required to "prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence." Robertsv. Ohio Permanente Medical Group, Inc. (1996), 76 Ohio St.3d 483, 485.
The central issue in this appeal is whether genuine issues of facts exist which, if believed by the trier-of-fact, could support appellant's claims against appellees. Appellant cites Turner v. Turner (1993),67 Ohio St.3d 337 for the proposition that questions of fact exist as Dr. Giordano's deposition contradicted portions of his affidavit. However, in that case, it was the movant who submitted the conflicting affidavit and deposition. The court held that the movant could not obtain summary judgment by submitting an affidavit that contradicted his previous deposition testimony. Id at syllabus. In the case at bar, appellant was not the movant. Therefore, Turner does not provide the proper standard.
This court has recently held:
 "Where an affidavit is inconsistent with affiant's prior deposition testimony as to material facts and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions in her prior testimony, the affidavit does not create a genuine issue of fact which would preclude summary judgment." Kollmorgan v. V.G. Raghavan, M.D., et al. (May 5, 2000), Mahoning App. No. 98 CA 123, unreported.
In that case, the deposition preceded the affidavit, while in this case, the affidavit was given first. In each instance, however, the movants have pointed to the deposition testimony in support of their motions for summary judgment. Given the procedural nature of this case, common sense dictates that Dr. Giordano's deposition must be treated like the affidavit in Kollmorgan as each represents subsequent sworn statements made by the witnesses. Therefore, any unexplained contradictions between the affidavit and deposition, in and of themselves, will not raise genuine issues of fact for trial.
In determining whether any material issues of fact remain for trial, we must review Dr. Giordano's affidavit and deposition. As previously discussed, Dr. Giordano's affidavit alleged specific instances in which he believed each appellees' conduct fell below the proper standard of care. He claimed that such breaches of the standard of care was the proximate cause of decedent's death. After careful review of Dr. Giordano's deposition, it is clear that appellant has established genuine issues of material fact concerning the Clinic and Dr. Skinner. However, with respect to the Vista Centre, appellant has failed to meet her burden of producing specific factual disputes for which reasonable minds could reach different conclusions. Dresher, supra at 293.
 THE CLEVELAND CLINIC
Appellee, Cleveland Clinic argues that the trial court properly sustained summary judgment in its favor. It contends that appellant failed to provide the required testimony of an established standard of care, the breach of which proximately caused decedent's death. It insists that Dr. Giordano did not state that its actions probably caused decedent's death. The Clinic claims that Dr. Giordano's only criticism of it is that: (1) it did not oversee decedent's care while he was at the Vista Centre, and (2) it did not order decedent to wear an abdominal binder after he was transferred to the Vista Centre.
The Clinic argues that it was under no duty to oversee the Vista Centre's care of decedent. In support of this contention, it refers to Dr. Giordano's deposition in which he conceded that, ordinarily, physicians who discharge patients from a rehabilitation facility do not continue to oversee those patients at a nursing home. (Giordano Depo. 92). However, Dr. Giordano noted that this was an unusual case. He claimed that in a situation where the patient has a rare condition like CIDP, the physician should continue care without an abrupt discontinuation. (Giordano Depo. 91).
Additionally, the Clinic contends that the nonuse of an abdominal binder had no relationship to decedent's death. It notes that Dr. Giordano admitted that he had never heard of an abdominal binder being used to prevent aspiration pneumonia, and he had never ordered his own patients to use a binder. (Giordano Depo. 114-16). However, Dr. Giordano explained that the purpose of the abdominal binder is to stabilize the patient's torso so that, when he eats, he will avoid certain contortions that would increase his chance to aspirate. (Giordano Depo. 115). Dr. Giordano concluded that, because the Clinic had used an abdominal binder on decedent while he was hospitalized there, they should have ordered the Vista Centre to use one as well. Nonetheless, the Clinic argues that Dr. Giordano never stated that its actions probably caused decedent's death. As previously noted, however, Dr. Giordano stated that, to a reasonable degree of medical certainty, a causal relationship existed between appellees' failure to comply with the standard of care and decedent's death. (Giordano Aff. 2).
Dr. Giordano's deposition, with respect to the Clinic, can be read in harmony with his affidavit. Dr. Giordano has provided specific instances in which he believes the Clinic's conduct fell below the standard of care. He has also stated that, in his opinion, this conduct caused decedent's death. The Clinic disagrees with Dr. Giordano's assessment. As such, appellant has established a genuine issue of material fact to be determined at trial.
The Clinic asserts that Dr. Giordano's opinions are irrelevant because he is not qualified as an expert witness. However, the trial court did not disqualify Dr. Giordano as an expert witness, and the Clinic has not raised any assignments of error. Therefore, this argument must be discarded.
 DR. SKINNER
Appellee, Dr. Skinner argues that Dr. Giordano did not show that his actions were the proximate cause of decedent's death. He notes that when asked whether, to a reasonable degree of medical certainty, treating decedent with Cipro was the proximate cause of decedent's death, Dr. Giordano replied that it could have been, but he could not say that it was probable. (Giordano Depo. 160).
However, this testimony is taken out of context. While Dr. Giordano testified that he could not say that simply prescribing Cipro probably caused decedent's death, his testimony could establish that Dr. Skinner's actions taken as a whole did cause decedent's death. Dr. Giordano testified that Dr. Skinner's conduct fell below the standard of care. He claimed that Dr. Skinner should have given decedent a urinary culture or an x-ray before prescribing Cipro. (Giordano Depo. 120, 158). Dr. Skinner prescribed Cipro to treat what he believed to be a urinary tract infection. The next day, decedent went to the Clinic where he was diagnosed with pneumonia from which he ultimately died. Dr. Giordano contends that Cipro is the wrong drug to treat pneumonia. (Giordano Depo. 131). He testified that Dr. Skinner should have performed a culture or chest x-ray prior to prescribing Cipro to treat what he believed to be a urinary tract infection. (Giordano Depo. 120, 158). Once the Cipro was taken by decedent, any test to determine whether he had a bacterial infection could be fouled. (Giordano Depo. 128).
Dr. Giordano claimed that Dr. Skinner, without performing a culture or x-ray, misdiagnosed decedent as having a urinary tract infection when he actually had pneumonia. (Giordano Depo. 131-32). Dr. Giordano testified that nothing in Dr. Skinner's records indicates that he performed a symptom review or examination. Dr. Giordano stated that there was no indication that decedent had a urinary tract infection. (Giordano Depo. 142). He claims that something must have caused Dr. Skinner to believe that decedent had an infection as he prescribed Cipro. (Giordano Depo. 129). However, Cipro is not a proper drug with which to treat pneumonia.
While decedent was properly diagnosed the next day at the Clinic, Dr. Giordano testified that with someone in decedent's age and condition, one day makes a difference. (Giordano Depo. 159). He noted that, even if decedent was given the proper treatment at the Clinic and making progress, he was unable to overcome the aspiration pneumonia. (Giordano Depo. 132).
Therefore, with respect to Dr. Skinner, appellant has established genuine issues of fact for trial. As such, summary judgment in favor of Dr. Skinner was improper.
 VISTA CENTRE
Appellee, Vista Centre argues that Dr. Giordano's deposition testimony establishes that it did not breach the standard of care proximately causing decedent's death. Dr. Giordano indicated four instances in which the Vista Centre fell below the standard of care. (Giordano Depo. 161-62). First, he claimed that it did not follow the proper regimen of physical therapy recommended by the Clinic. The Clinic ordered that therapy be conducted twice every day. The Vista Center employees, however, followed Dr. Skinner's order and conducted physical therapy only five days each week. Nonetheless, Dr. Giordano testified that they were reasonable in following such orders. (Giordano Depo. 191).
Dr. Giordano next contended that the Vista Centre was negligent in allowing decedent to lay flat in bed. While no records indicated that decedent actually laid flat, Dr. Giordano claimed that it could be inferred as the records were void of any orders to elevate decedent. However, he admitted that the Vista Centre personnel could not be expected to elevate decedent in bed without being ordered to do so. (Giordano Depo. 192).
Next, Dr. Giordano argued that the Vista Centre should have used an abdominal binder to support decedent's torso. He stated, however, that the Vista Centre employees did not have a duty to use the binder because they were not ordered to do so by the Clinic. (Giordano Depo. 192).
Finally, Dr. Giordano testified that while decedent was at the Vista Centre, his conditioned worsened. He conceded, however, that the notes and records do not indicate that decedent deteriorated enough to require the Vista Centre staff to report this to Dr. Skinner. (Giordano Depo. 193).
Dr. Giordano was asked whether he had any opinion that "to a reasonable degree of medical probability, based upon what [he had] reviewed, that the nurses, respiratory therapists, occupational therapists, anybody employed by the nursing home, setting aside Dr. Skinner's relationship, in any way deviated from appropriate standards of care for their occupation * * *." (Giordano Depo. 193). He replied, "I would have to say no." (Giordano Depo. 193).
Appellant has not alleged that the Vista Centre is liable for Dr. Skinner's actions under the theory of respondeat superior. She has not even claimed that Dr. Skinner was an employee of the Vista Centre. In fact, Dr. Skinner claimed that when he was the medical director of the Vista Centre, he was an independent contractor. (Skinner Depo. 10). As such, Dr. Skinner's conduct cannot be imputed to the Vista Centre. SeeKrause v. Case Western Reserve University (December 19, 1996), Cuyahoga App. No. 70712, unreported. Therefore, with respect to the Vista Centre, appellant has failed to show a genuine issue of material fact. Because Dr. Giordano conceded that the Vista Centre acted reasonably regarding its care of decedent, it was entitled to a judgment as a matter of law.
For the foregoing reasons, appellant's assignments of error with respect to the Cleveland Clinic and Dr. Skinner are found to have merit. The judgment of the trial court is affirmed in part, reversed in part and this cause is remanded to the trial court for further proceedings according to law and consistent with this court's opinion.
Cox, P.J., concurs, Waite, J., concurs.