JOURNAL ENTRY and OPINION.
{¶ 1} Appellant Thomas Daniel Ruble (Ruble), the administrator of the estate of Ruth Ruble, appeals from the trial court's directing a verdict in favor of appellees Paul M. Kaufman and Jeffrey R. Wahl, on his claim for legal malpractice. The action arises out of Kaufman's and Wahl's withdrawal from representing Ruble in a medical malpractice lawsuit. Ruble assigns the following errors for our review:
 {¶ 2} "I. A reasonable jury could have found that the testimony of plaintiff's legal malpractice expert was sufficient to prove malpractice."
 {¶ 3} "II. The trial court erred as a matter of law by making plaintiff prove the underlying case as it stood after defendants' legal malpractice."
 {¶ 4} "III. The trial court erred in striking all of plaintiff's witnesses relating to the value of the underlying case."
 {¶ 5} "IV. The trial court erred as a matter of law by granting defendants' motion for a directed verdict as to damages."
 {¶ 6} "V. The trial court erred in denying plaintiff's multi-part motion in limine."
 {¶ 7} Appellees Kaufman and Wahl filed a cross-appeal from the trial court's permitting certain testimony to be admitted during Ruble's case-in-chief and assigns the following two errors for review:
 {¶ 8} "I. The trial court erred in allowing plaintiff's expert, Dr. Shareef, to testify as to opinions which were not contained in his report in violation of Cuyahoga County Local Rule 21.1."
 {¶ 9} "II. The trial court erred in allowing plaintiff to present evidence and testimony regarding Dr. Klein when the trial court had previously ruled that such evidence/testimony was irrelevant and thus, inadmissible."
 {¶ 10} Having reviewed the record and pertinent law, we affirm the directed verdict and find the cross-appeal is moot. The apposite facts follow.
 {¶ 11} On December 2, 1998, Ruble filed a legal malpractice action against Kaufman and Wahl alleging their withdrawal of representation three weeks prior to trial constituted legal malpractice. Later, in his motion in opposition to summary judgment, Ruble also claimed counsel was negligent in conducting discovery by failing to obtain experts in support of the medical malpractice claim.
 {¶ 12} The trial court granted summary judgment in favor of Kaufman and Wahl as to Ruble's claim the attorneys were negligent in conducting discovery, but found genuine issues of fact remained regarding whether the attorneys' withdrawal from the representation three weeks prior to trial constituted negligent representation. The matter thereafter proceeded to trial.
 {¶ 13} Ruble testified that on December 30, 1994, he filed a pro se complaint against the Cleveland Clinic Foundation and various physicians for the wrongful death of his wife Ruth Ruble. Ruth Ruble, after undergoing elective hip surgery died at the Cleveland Clinic.[1]
Ruble contended his wife's death was due to substandard post-operative care. The Clinic argued the death was a result of a sudden, unexpected heart attack.
 {¶ 14} Trial was initially set for January 29, 1996, but Ruble later filed a motion for continuance in order to obtain counsel, which was granted. Ruble thereafter retained Paul M. Kaufman and Jeffrey R. Wahl as counsel and a new trial date of August 12, 1996 was set. Prior to obtaining Kaufman and Wahl as counsel, Ruble independently obtained expert reports from Drs. Shareef and Cohen. According to Ruble, Cohen later refused to testify and Kaufman and Wahl did not like Dr. Shareef's report because it was legally inadequate. According to Ruble, Dr. Shareef informed him he was not competent to respond to the Clinic's expert report because he was not a cardiologist.
 {¶ 15} In late October, Ruble contacted Dr. Klein after being told by Wahl there were problems getting an expert cardiologist to testify malpractice was the cause of death. Although Ruble informed the attorneys he had found an expert cardiologist who would support the case, he refused to reveal to them Dr. Klein's name or telephone number. According to Ruble, at that point he did not trust his attorneys to speak with his expert because he felt they were sabotaging the case.
 {¶ 16} Kaufman and Wahl testified that on July 16, 1996 they filed a joint motion to continue trial. The trial court granted the motion and set trial for December 4, 1996. In the order, the trial court also stated there would be no further continuances. According to Ruble, the attorneys never advised him the trial court had ordered no further continuances. Both Kaufman and Wahl denied knowledge of the "no further continuance" order.
 {¶ 17} Kaufman and Wahl testified Ruble's case was problematic because they could not find an expert to support the medical malpractice claim. Although Ruble had obtained the expert testimony of Drs. Shareef and Cohen, Kaufman and Wahl felt the opinions were legally inadequate. Dr. Shareef did not testify to a reasonable medical probability that medical malpractice caused the death. He simply stated malpractice "could have" caused the death. Dr. Shareef refused to alter his report to include a legally sufficient opinion as to causation. Dr. Cohen's report was useless because he refused to testify at trial. According to Ruble, Dr. Cohen refused to testify because of his ties to the Clinic.
 {¶ 18} Kaufman and Wahl contacted five other experts, all of whom opined that medical malpractice was not the cause of the death.
 {¶ 19} On September 30, 1996, Wahl wrote an internal office memorandum to Kaufman assessing the strength of the case. Due to the problems with obtaining an expert to support the case, they agreed the case should be dismissed. Wahl claimed that prior to this memorandum, Ruble was well aware of the problems with the case.
 {¶ 20} According to Kaufman and Wahl, Ruble informed them in late October that he was able to obtain the expert opinion of a cardiologist who would testify malpractice was the cause of the death. However, Ruble refused to give the attorneys the name of the expert.
 {¶ 21} Although the attorneys desired to dismiss the case, Ruble refused to give the attorneys permission to do so and wrote a letter instructing them not to dismiss without his written consent. Kaufman and Wahl then informed Ruble in a letter on November 7, 1996, they wished to withdraw as counsel and would ask the trial court for consent to withdraw at the final pretrial on November 13, 1996.
 {¶ 22} The parties disagree what actually transpired at the final pretrial. According to Kaufman and Wahl, at the final pretrial, they informed the court that due to irreconcilable differences with Ruble they wished to withdraw as counsel. Kaufman and Wahl testified the judge then asked Ruble if he wished to have Kaufman and Wahl as counsel and he responded "no." Both attorneys also testified Ruble had informed the judge he already had new counsel and that the judge instructed Ruble to have the new attorney call the law clerk immediately.
 {¶ 23} According to Ruble, at the final pretrial he informed the judge he would allow Kaufman and Ruble to withdraw only if the judge agreed to continue the trial so new counsel would have adequate time to prepare. He also contended he merely told the judge he had several attorneys in mind to represent him and he was instructed to have the attorney call the judge's law clerk.
 {¶ 24} After the final pretrial, Kaufman, Wahl and Ruble walked back to the law offices. Ruble claimed he overheard one of the attorneys say something like "wait until the judge sees no continuances." Both Kaufman and Wahl denied making the statement and claimed they were not aware the trial court ordered "no further continuances" as they had no record of the postcard notice of the order. According to Ruble, if he had been aware there was an order for "no further continuances" he would have never allowed Kaufman and Wahl to withdraw as counsel.
 {¶ 25} Attorney Hofelich testified that on November 22, 1996, Ruble contacted him to represent him in the medical malpractice case. Hofelich stated he would not even consider taking the case unless a continuance of the trial was granted because he did not have adequate time to prepare for the December 4th trial. Ruble informed Hofelich the judge told him to have him call her law clerk to obtain a continuance. Hofelich testified when he called the judge's chambers, he was informed no further continuances would be granted. He therefore refused to take the case.
 {¶ 26} Ruble testified he thereafter filed a pro se motion for a continuance on November 27, 1996, which was denied. Ruble never contacted Kaufman and Wahl regarding having them represent him at trial once the continuance was denied. The medical malpractice case proceeded to trial as ordered on December 4th. Ruble appeared pro se and failed to present any evidence. A directed verdict in favor of the Clinic was entered.
 {¶ 27} Ruble appealed the directed verdict in the medical malpractice case to this court, arguing the trial court erred by not granting him an extension of time for trial. This court in Ruble v.Cleveland Clinic[2] affirmed the judgment and found the trial court did not err by failing to grant a continuance.
 {¶ 28} Along with the above testimony, Ruble presented two experts in support of his legal malpractice claim. Geoffrey Stern testified the late withdrawal of counsel three weeks prior to trial constituted negligent representation. He also stated the attorneys' failure to inform Ruble about the court's ordering no further continuances prevented Ruble from making an informed decision regarding permitting the attorneys to withdraw. Stern conceded he was never shown the appellate court opinion in which this court held the withdrawal was done with consent of the court.
 {¶ 29} Dr. Shareef testified on behalf of Ruble and opined that malpractice occurred. However, he failed to testify within a reasonable medical probability that malpractice was the cause of the death. The trial court therefore granted Kaufman's and Wahl's motion to strike the doctor's testimony.
 {¶ 30} After the close of Ruble's case, Kaufman and Wahl moved for a directed verdict. In support of the motion, they argued Ruble failed to present evidence the medical malpractice case had merit at the time they withdrew and, furthermore, because the court consented to the withdrawal, it was not improper.
 {¶ 31} The trial court granted the directed verdict finding the withdrawal from representation did not constitute legal malpractice because the attorneys withdrew with consent of the court and that Ruble had indicated he had counsel. The court also found that Ruble failed to prove he was damaged by the withdrawal because at the time of the withdrawal, there was no competent opinion by a medical expert in support of the case.
 {¶ 32} We will address the second and fourth assigned errors first because they resolve issues raised in the other errors and both also involve the issue of the trial court's requiring Ruble to establish that his underlying medical malpractice case had merit.
 {¶ 33} According to Ruble, the Ohio Supreme Court's holding inVahila v. Hall[3] does not require the plaintiff in a legal malpractice case to prove he or she would prevail in the underlying action.
 {¶ 34} In Vahila, the Ohio Supreme Court held to establish a cause of action for legal malpractice, a plaintiff must show "(1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a casual connection between the conduct complained of and the resulting damage or loss."[4]
 {¶ 35} After setting forth the elements of a legal malpractice claim, the Court went on to specifically reject the argument that the element of causation, in the context of a legal malpractice action, requires a plaintiff to prove in all cases that he or she would have been successful in the underlying matter(s) giving rise to the complaint. The Court specifically stated:
 {¶ 36} "We are aware that the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim. See * * * [Krahn v.Kinney (1989), 43 Ohio St.3d 103, 106, 538 N.E.2d 1058]. However, we cannot endorse a blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter. Such a requirement would be unjust, making any recovery virtually impossible for those who truly have a meritorious legal malpractice claim."[5]
 {¶ 37} Therefore, although the Ohio Supreme Court held it may not be necessary to provide evidence of the merits of the underlying claim in all cases, it conceded in some cases it might be necessary.
 {¶ 38} We conclude based on the particular facts of this case, proof there was "some" merit to the underlying case was crucial. Kaufman and Wahl withdrew based on their belief there was no merit to the case because they could not obtain an expert report stating malpractice caused the death of Ruth Ruble. Proof of some causal connection between the attorneys' withdrawal from the case and damages suffered by Ruble was a necessary element of proof for Ruble to set forth a viable legal malpractice claim. In the absence of legally competent expert evidence that medical malpractice was in fact the cause of Ruth Ruble's death, there is no causal connection between the attorneys' withdrawal from the case and Ruble's unsuccessful trial on the medical malpractice claim. If there was no viable medical malpractice claim, the withdrawal did nothing to damage the case.
 {¶ 39} Therefore, it was necessary to prove there was some merit to the case in order for the withdrawal to constitute malpractice. After all, attorneys are prohibited from bringing frivolous cases and can be sanctioned for doing so.[6]
 {¶ 40} A review of the record indicates when the attorneys withdrew, an expert was not available to testify within a reasonable degree of medical certainty that medical malpractice was the cause of death. In order to prevail on a claim of medical malpractice, one must prove by a preponderance of the evidence that his or her injury was directly and proximately caused by an act or omission that did not meet the standard of care of a doctor of ordinary skill, care and diligence under like circumstances.[7] Moreover, one is generally required to "prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence."[8]
 {¶ 41} Kaufman and Wahl had obtained the opinion of five medical experts all of whom opined that medical malpractice was not the cause of Ruth Ruble's death. Although Ruble had obtained independently of his counsel the expert opinions of Dr. Shareef, Dr. Cohen and Dr. Klein, these opinions for one reason or another were not legally adequate or not verifiable as adequate. Dr. Shareef's opinion was inadequate because he failed to testify within a reasonable medical probability that malpractice caused Ruth Ruble's death. Although he did conclude with reasonable medical probability that medical malpractice occurred, he never testified that within reasonable medical probability it was the cause of death. Instead, he only opined in his report it "could have" caused her death. When asked to revise his opinion within legally acceptable terms, he refused.
 {¶ 42} Dr. Cohen, refused to testify at trial and would not return telephone calls. His expert report alone, without the opportunity of being cross-examined, was not admissible evidence.[9]
 {¶ 43} Although Ruble contends Dr. Klein would have testified to the fact that medical malpractice was the cause of death, Ruble refused to reveal Dr. Klein's name or telephone number to the attorneys and therefore they had no way of determining whether he was a competent and qualified witness.
 {¶ 44} We conclude under these circumstances, where no competent expert opinion supported the malpractice claim at the time of the withdrawal from representation, Ruble's claim for malpractice claim was without merit. At that point of withdrawal, there was not even any settlement value to the case without an expert to support the claim.
 {¶ 45} Although Ruble also argues the trial court erred by not permitting him to introduce evidence of expert opinions obtained after the withdrawal, we find no merit to the argument. Ruble never claimed in his complaint that Kaufman and Wahl failed to properly conduct discovery. He raised the issue in his motion in opposition to the attorneys' motion for summary judgment, but supplied no expert report or testimony in support of the allegation. Kaufman and Wahl, however, in responding to the allegation provided an expert opinion indicating they were not negligent in preparing the case for trial. The trial court therefore granted summary judgment in Kaufman's and Wahl's favor regarding the alleged malpractice related to discovery.
 {¶ 46} Accordingly, because the trial court had granted summary judgment on the issue due to Ruble's failure to support the claim with expert evidence, the court did not err by prohibiting introduction of expert opinions obtained after the attorneys withdrew.
 {¶ 47} Accordingly Ruble's second and fourth assigned errors are overruled.
 {¶ 48} In his first assigned error, Ruble argues the trial court erred by directing a verdict in favor of appellees because his expert, Geoffrey Stern, testified the legal representation by Kaufman and Wahl fell below the standard of care.
 {¶ 49} We find it is unnecessary to address this assignment of error because regardless of any breach of duty, as we discussed in the above assigned errors, Ruble has failed to show he was damaged by the withdrawal of representation by Kaufman and Wahl.
 {¶ 50} Accordingly, this assignment of error is moot.[10]
 {¶ 51} In his third assigned error, Ruble argues the trial court erred by not permitting Dr. Klein's and Dr. Leppla's testimony at trial.
 {¶ 52} The trial court properly prohibited Dr. Klein's testimony because the evidence at trial indicated that Ruble refused to give Kaufman and Wahl the name of Dr. Klein. Therefore, because Kaufman and Wahl had no way of knowing what Dr. Klein would testify to or whether he was indeed qualified to testify, his testimony was not relevant to the state of the case at the time of the withdrawal.
 {¶ 53} Whether Dr. Leppla's testimony was admissible or not as to the value of the case is moot. As held above, because Ruble failed to present evidence the attorneys' withdrawal damaged the case, Ruble's legal malpractice claim was without merit.
 {¶ 54} Ruble's third assigned error is overruled.
 {¶ 55} In his fifth assigned error, Ruble argues the trial court erred by denying his motions to strike Dr. Cohen's testimony, the testimony of the five experts contacted by Kaufman and Wahl, and Judge Strickland Saffold's testimony regarding her orders in the underlying medical malpractice case.
 {¶ 56} Because we conclude the trial court properly entered a directed verdict, these issues are moot because the evidence at issue was anticipated to be presented by the defense in the event the directed verdict was overturned.
 {¶ 57} We also find Kaufman's and Wahl's cross-appeal concerning errors that occurred during trial to be moot because we find a directed verdict was properly entered.
Judgment affirmed.
MICHAEL J. CORRIGAN, P.J., and JAMES J. SWEENEY, J., concur.
[1] The action had been filed previously by Elk and Elk, Ruble's attorneys at the time, but was voluntarily dismissed without prejudice by Ruble, when he could not afford to pay Elk and Elk the out of pocket expenses incurred in the case.
[2] (Oct. 16, 1997), Cuyahoga App. No. 71844.
[3] (1997), 77 Ohio St.3d 421.
[4] Id. at 427-28.
[5] Id.
[6] Civ.R. 11; R.C. 2323.51.
[7] Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131.
[8] Roberts v. Ohio Permanente Medical Group, Inc. (1996),76 Ohio St.3d 483, 485.
[9] Davis v. Grimes (March 20, 1997), Cuyahoga App. No. 70861.
[10] App.R. 12(A)(1)(c).