JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Sarah Olynyk ("appellant") appeals from the judgment of the trial court granting summary judgment in favor of defendants-appellants Peter Scoles, M.D. and Jack Andrish, M.D. For the reasons set forth below, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.
 {¶ 2} Appellant, then twelve years old, suffered from low back pain for a few months and in mid-April of 1995, sought treatment from Dr. Scoles, who initiated diagnostic testing for appellant. At the beginning of May, appellant's mother, Dr. Olynyk was dissatisfied with Dr. Scoles and sought treatment for her daughter from Dr. Andrish.
 {¶ 3} Dr. Andrish reviewed films completed under the care of Dr. Scoles and thereafter recommended physical therapy for appellant. Appellant completed several physical therapy sessions, but on May 25, 1995, entered the emergency room with acute back pain. Dr. Scoles, who happened to be on call that night, was her treating physician and admitted appellant for overnight observation. Appellant was treated by a neurosurgeon, as well as Dr. Scoles and another physician. Appellant was discharged because her pain had subsided and she was diagnosed with chronic back pain. Appellant had a follow-up appointment with Dr. Andrish and continued with his recommendation of physical therapy.
 {¶ 4} In July of 1995, appellant was referred to a pediatric rheumatologist who examined appellant. After the rheumatologist ordered further diagnostic tests on appellant, she was diagnosed in August of 1995 with a bone infection, which a radiologist interpreted to be discitis with adjacent osteomyelitis. Appellant thereafter underwent antibiotic therapy, but now suffers from a permanent spinal injury and chronic back pain.
 {¶ 5} Appellant filed suit against, among others, Dr. Scoles and Dr. Andrish asserting a claim for medical malpractice for failure to timely diagnose and treat vertebral osteomyelitis. Both doctors filed motions for summary judgment, which the trial court granted in September of 2003. It is from this ruling that appellant now appeals, asserting this sole assignment of error:
 {¶ 6} "I. The trial court erred in granting summary judgment to defendants Scoles and Andrish on the basis that `no genuine issue of material fact exists' by journal entry, vol. 2987, p. 588."
 {¶ 7} Appellant challenges the propriety of the trial court's decision granting summary judgment in favor of Scoles and Andrish.
 {¶ 8} Summary judgment is appropriate where: "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Horton v. Harwick Chem.Corp., 73 Ohio St.3d 679, 1995-Ohio-286, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Zivich v.Mentor Soccer Club, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389.
 {¶ 9} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389.
 {¶ 10} "In order to establish a claim for medical malpractice, a plaintiff must demonstrate, by a preponderance of the evidence, (1) that there existed a duty on behalf of the physician-defendant to the plaintiff; (2) the standard of care recognized by the medical community; (3) the failure of the defendant to meet that standard of care; and (4) a causal link between the negligent act and the injuries sustained. Bruni v.Tatsumi (1976), 46 Ohio St.2d 127, paragraph one of the syllabus; see, also, Roberts v. Ohio Permanente Med. Group,76 Ohio St.3d 483, 1996-Ohio-375. A plaintiff must present expert testimony in order to demonstrate that the actions of a physician fell below the standard of care and that this breach was the cause of the injuries sustained. Bruni,46 Ohio St.2d at 131-132." Perla v. Cleveland Clinic Found., Cuyahoga App. No. 83058, 2004-Ohio-2156.
 {¶ 11} Appellant maintains that she presented sufficient deposition expert testimony to support her claim that Dr. Scoles and Dr. Andrish deviated from the standard of care owed to her by failing to timely diagnose and treat her spinal infection, which thereafter caused permanent injury to her spine.
 Dr. Scoles {¶ 12} Appellant first sought treatment from Dr. Scoles at University Hospitals on April 15, 1995, complaining of back pain that had persisted for approximately four months prior to her visit. Dr. Scoles, a pediatric orthopedic surgeon, completed a full history and physical examination. He ordered a scoliosis x-ray, which was completed the same day and a triple phase bone scan, which was completed on April 25, 1995. The results of the bone scan were suggestive of a tumor, so Dr. Scoles thereafter ordered a CT scan, which was completed on May 3, 1995. Dr. Scoles ruled out the possibility of a bone tumor as the cause of appellant's pain. On May 4, 1995, appellant's mother, also a physician, contacted Dr. Scoles' office to find out the results of the CT scan. Rebecca Ratajczak, Dr. Scoles' secretary, informed appellant's mother that Dr. Scoles was out of town, that he would review the results of the CT scan on Monday, May 8, 1995, and that Dr. Scoles would contact her at that time.
 {¶ 13} Appellant's mother testified that she was not satisfied with this response and requested an appointment so that Dr. Scoles could explain the results of the CT scan to her in person. There is some dispute regarding the precise dialogue between Rebecca and Dr. Olynyk in attempting to make an appointment with Dr. Scoles. However, the record is clear that Dr. Olynyk stated that she would take her daughter to the Cleveland Clinic if she could not see Dr. Scoles when she wanted. The record is also clear that when Rebecca called Dr. Olynyk back to schedule an appointment with one of Dr. Scoles' partners for May 9, 1995, Dr. Olynyk had already made an appointment to take appellant to the Cleveland Clinic.
 {¶ 14} Appellant presented the deposition expert testimony of Dr. Frank Bryant, a general orthopedic physician. Dr. Bryant opined that Dr. Scoles acted reasonably with regard to appellant's office visit on April 15, 1995. Specifically, he stated that it was very appropriate to take appellant's history, examine her and order a sedimentation rate ("sed rate"), a scoliosis film and a triple phase bone scan.
 {¶ 15} Dr. Bryant opined that his interpretation of the initial x-ray did not indicate typical signs of vertebral osteomyelitis ("osteomyelitis"), stating that indicators of osteomyelitis would likely not have been present at such an early stage. He conceded that, at the April 15th appointment, appellant did not present other symptoms typical of osteomyelitis, such as an elevated erythrocyte sed rate, an abnormal C-reactive protein, an elevated white blood cell count, elevated tenderness to palpation, fever or abnormal lab results. Dr. Bryant further testified that it was reasonable for Dr. Scoles to order the CT scan to rule out other diagnostic possibilities or to establish a diagnosis that would explain the clinical findings and the abnormal bone scan.
 {¶ 16} Dr. Bryant opined that Dr. Scoles ordered the right type of CT scan and agreed with the radiologist's interpretation that there was nothing diagnostic in the CT scan results. He did state that with the benefit of hindsight and knowing appellant's eventual diagnosis, that there existed two subtle findings that "might" support the osteomyelitis diagnosis.
 {¶ 17} Dr. Bryant stated that he had no criticisms of Dr. Scoles' treatment up to this point. He stated that Dr. Scoles' treatment was absolutely reasonable, assuming that there existed a follow-up appointment to review the CT scan results with appellant and her mother. As stated above, Dr. Olynyk testified at deposition that Rebecca from Dr. Scoles' office had called her back to schedule an appointment for Tuesday, May 9th with one of Dr. Scoles' partners. Dr. Olynyk further testified that she informed Dr. Scoles' office that she intended to take her daughter to the Cleveland Clinic for a follow-up appointment. She asked that her daughter's medical records be available for her to pick up, which she did on her way to the appointment at the Cleveland Clinic.
 {¶ 18} Dr. Bryant also stated that he had no criticisms of Dr. Scoles' care regarding his involvement with appellant at the emergency room of University Hospitals on May 25, 1995. He confirmed that the examination by Dr. Scoles and the pediatric neurosurgeon on call both revealed completely normal findings. Dr. Bryant opined again that if the appropriate follow-up appointments had been arranged, he was not critical of the standard of care given by Dr. Scoles to appellant.
 {¶ 19} Appellant maintains that Dr. Bryant was given an improper hypothetical during deposition upon which to base his opinion. It follows, she argues, that there still exists a genuine issue of material fact regarding whether Dr. Scoles breached the standard of care owed to her because she claims the record reveals that Dr. Scoles did not appropriately follow-up with appellant. We disagree.
 {¶ 20} Dr. Bryant testified that each time Dr. Scoles examined appellant, the steps he took to attempt to diagnose her were reasonable. He stated, however, that a follow-up appointment after each visit would dictate whether Dr. Scoles acted reasonably and in conformity with the appropriate standard of care. The record is clear that Dr. Olynyk chose not to visit Dr. Scoles' office on May 9, 1995. It is also clear that, following appellant's visit to the emergency room on May 25, appellant was to follow up with Dr. Benish (appellant's pediatrician). There is a notation in appellant's hospital record that "Mother requested to be covered by Dr. Benish's service. Called office (991-4180) and asked to speak to [attending] covering [Rainbow Babies and Children at University Hospital] — awaiting response. Discussed with Dr. Ponitz per him, it's OK to speak to Dr. Benish re change of service if mother so choose. No consults or further work-up currently until consults with [attending]."
 {¶ 21} We find that no genuine issue of material fact exists regarding Dr. Scoles' treatment and/or follow-up with appellant. The record reveals that Dr. Scoles did not breach the standard of care owed to appellant. We therefore find that the trial court's decision to grant summary judgment with regard to Dr. Scoles was proper.
 Dr. Andrish {¶ 22} Dr. Bryant testified that he was critical of the standard of care rendered by Dr. Andrish. He opined that Dr. Andrish failed to timely diagnose discitis and possible vertebral osteomyelitis despite adequate subjective and objective information regarding appellant's symptoms. Specifically, Dr. Bryant stated that the objective information Dr. Andrish had before him included an abnormal bone scan from April 25th, an abnormal x-ray from the emergency room visit, and evidence of appellant's failure to improve, as indicated by increasing severe symptoms reported at physical therapy sessions and subsequent emergency room and doctors' visits. Dr. Bryant opined that Dr. Andrish should have diagnosed the vertebral osteomyelitis given this objective information coupled with appellant's clinical complaints, such as: the cessation of a previously pleasurable activity (i.e. ballet), difficulty sleeping, night pain and failure to climb stairs. Dr. Bryant also criticized the diagnosis that Dr. Andrish made on May 8, 1995, finding that "apophysitis or a fraction of apophysitis of the posterior iliac crest" was essentially a "non-diagnosis" of which he had never heard in his profession.
 {¶ 23} Furthermore, Dr. Bryant opined with a reasonable degree of medical certainty that appellant's vertebral collapse would, more likely than not, have been prevented had Dr. Andrish timely diagnosed and treated appellant's condition.
 {¶ 24} Appellant also presented the expert testimony of Dr. Charles Woods, who stated that his expert opinion focused entirely on causation issues, not whether either Dr. Scoles or Dr. Andrish deviated from the appropriate standard of care. Dr. Woods opined that appellant's current pain or problems in the affected area is the result of the infection she suffered in 1995. Specifically, Dr. Woods opined that, had the vertebral osteomyelitis been properly diagnosed and treated, it would have arrested at a certain point, lessening the chance of long-term consequences or allowing complete healing and reconstitution of damaged tissues.
 {¶ 25} Initially, we note that it is undisputed that appellant currently suffers from some back pain. Dr. Woods admitted, however, that he did not have independent confirmation regarding the extent of appellant's current pain or problems. Dr. Andrish maintains that Dr. Woods' inability to quantify appellant's current injuries renders it impossible for appellant to prove that any alleged deviation from the standard of care on his part caused her current injuries. We disagree.
 {¶ 26} Dr. Woods' inability to quantify appellant's current injuries as a result of any alleged failure by Dr. Andrish to timely diagnose and treat appellant does not simply equate to a lack of causation in this case. Rather, given the undisputed fact that appellant does suffer some back pain, any quantitative analysis regarding the extent of those long-term effects on appellant would be applicable to the trier of fact only when contemplating damages. In light of the expert testimony of Dr. Bryant and Dr. Woods, we find that a genuine issue of material fact exists regarding whether Dr. Andrish deviated from the standard of care owed to appellant by failing to timely diagnose and treat her condition and regarding causation in this case. Therefore, we reverse the trial court's judgment granting summary judgment in favor of Dr. Andrish and remand for further proceedings consistent with this opinion. Judgment affirmed in part, reversed in part and remanded for proceedings consistent with this opinion.
Cooney and Rocco, JJ., concur.
It is ordered that the costs be split between appellant and appellee, Jack T. Andrish, M.D.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.