DECISION
{¶ 1} Plaintiffs-appellants, JoJean Southwick and Larry Southwick, appeal the judgment of the Hamilton County Court of Common Pleas granting a directed verdict in favor of defendants-appellees, University Hospital, Inc., The Health Alliance of Greater Cincinnati, University Surgical Group of Cincinnati, Inc., Per-Olof Hasselgren, M.D., Blue Ash Family Practice, and Rivka A. Sanders, M.D. (collectively, "appellees"), in a medical-malpractice action.
 Diagnosis and Treatment {¶ 2} In late 1998, JoJean Southwick visited Dr. Sanders, her primary care physician, at Blue Ash Family Practice. She complained of a lump near her left breast, and Dr. Sanders ordered a mammogram. The mammogram revealed a small mass, and it was recommended that she undergo a biopsy.
 {¶ 3} The biopsy was performed at University Hospital, which was affiliated with the Health Alliance of Cincinnati. Based upon the results of the biopsy, surgical excision of the mass was recommended.
 {¶ 4} In December 1998, Dr. Hasselgren, an employee of Universal Surgical Group of Cincinnati, performed the surgical excision. A post-operative analysis of the mass revealed that there was a carcinoma in the left lymph node. According to the Southwicks, the doctors did not notify them of the presence of the cancer.
 {¶ 5} In May 2000, JoJean Southwick again developed pain in her left arm, and tests revealed the presence of the carcinoma. Doctors performed a modified radical mastectomy and administered radiation therapy and chemotherapy.
 {¶ 6} In July 2003, the Southwicks filed a medical-malpractice action, contending that the appellees had negligently failed to inform JoJean Southwick of the carcinoma. They sought damages for medical expenses, lost wages, and loss of consortium.
 {¶ 7} The case proceeded to trial in February 2005. In the Southwicks' opening statement, counsel did not indicate that the eighteen-month delay in treatment had affected the procedures that had been necessary to treat the cancer, and counsel conceded that the cancer had not returned as of the time of trial.
 {¶ 8} According to counsel, the sole basis for claiming damages was expert testimony that the eighteen-month delay in treatment had reduced JoJean Southwick's chance of recovery from approximately eighty-five percent to approximately seventy-five percent.
 {¶ 9} After opening statements, the appellees moved for a directed verdict, arguing that Ohio law did not permit loss-of-chance damages for a plaintiff who claimed that her chance for recovery remained greater than fifty percent irrespective of the defendants' alleged negligence. The trial court granted the motion for a directed verdict.
 Directed Verdict {¶ 10} In a single assignment of error, the Southwicks now argue that the trial court erred in granting the motion for a directed verdict.
 {¶ 11} To establish medical malpractice, the plaintiff must demonstrate that injury was caused by the doing of some particular thing that a physician of ordinary skill, care, and diligence would not have done under the circumstances or by the failure to do something that such a physician would have done under the circumstances, and that the injury complained of was the direct and proximate result of the act or omission.[1]
 {¶ 12} Under Civ.R. 50(A)(1), a party may move for a directed verdict after an opponent's opening statement. But "[a] trial court should exercise great caution in sustaining a motion for a directed verdict on the opening statement of counsel; it must be clear that all the facts expected to be proved, and those that have been stated, do not constitute a cause of action or a defense, and the statement must be liberally construed in favor of the party against whom the motion has been made."[2]
 Roberts and Loss of Chance {¶ 13} The Ohio Supreme Court adopted the loss-of-chance theory in Roberts v. Ohio Permanente Med. Group Inc.[3]
In Roberts, the court stated that "[i]n order to maintain an action for the loss of a less-than-even chance of recovery orsurvival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of harm to the plaintiff."[4] The court further held that "[t]he amount of damages recoverable by a plaintiff in a loss-of-chance case equals the total sum of damages for the underlying injury or death assessed from the date of the negligent act or omission multiplied by the percentage of the lost chance."[5]
 {¶ 14} In applying the Roberts rule, this court has held that to prevail, the patient must have had a less-than-fifty-percent chance of survival prior to the alleged negligent act. In Fehrenbach v. O'Malley,[6] the plaintiffs presented evidence that had the patient been properly diagnosed and treated, she would have had an eighty-percent chance of recovery. We held that the plaintiffs were not entitled to a jury instruction on the loss-of-chance because the "instruction is not applicable where the plaintiff demonstrates a more-than-even chance of a full recovery with proper diagnosis and treatment."[7] In so holding, we stated that "loss of chance" would be "more accurately referred to as the `loss of less than even chance of recovery or survival.'"[8]
 {¶ 15} Other Ohio appellate districts have reached the same conclusion. In McDermott v. Tweel,[9] the Tenth Appellate District held that the plaintiff could not prevail where one physician had allegedly reduced the decedent's chance of recovery from ninety-five to ninety percent and another physician had reduced the chance from between fifty percent and seventy-five percent to fifty percent. And in Liotta v. Rainey,[10]
the Eighth Appellate District held that the plaintiff could not prevail where the negligence had allegedly reduced the decedent's chance of recovery from eighty-nine percent to seventy percent.
 {¶ 16} Despite the seemingly well-settled rule that liability is predicated upon proof of a less-than-even chance of survival or recovery, the Southwicks contend that the Roberts court intended to create an independent cause of action for loss-of-chance irrespective of the likelihood of survival before or after the alleged negligence. Under the rule espoused by the Southwicks, the loss-of-chance rule is not a mere relaxation of traditional causation doctrine; the rule would permit recovery for the loss-of-chance itself.
 {¶ 17} We are not persuaded by the Southwicks' argument. In adopting the loss-of-chance doctrine, the Roberts court emphasized that it was doing so to ameliorate the harshness of traditional rules of causation.
 {¶ 18} In Roberts, the court specifically stated that "the `loss of chance' theory * * * provides an exception to the traditionally strict standard of proving causation in a medical malpractice action. Instead of being required to prove with reasonable probability that defendant's tortious conduct proximately caused injury or death, the plaintiff, who was already suffering from some disease or disorder at the time the malpractice occurred, can recover for his or her `lost chance' even though the possibility of survival or recovery is less than probable."[11]
 {¶ 19} Also, in summarizing its holding, the court stressed that "our decision today is limited in its scope and does not alter traditional principles of causation in other areas of tort law."[12] This language again indicated that the court intended only to alter the rule of causation, not to create a new cause of action.
 {¶ 20} Although the Roberts court also cited with approval an article in which the author apparently advocated the adoption of loss-of-chance as an independent cause of action,[13]
the court's explicit restriction of the rule to those plaintiffs with less than an even chance of recovery indicated that the adoption of the rule was intended to relax the rules of causation and not to create an independent cause of action.
 {¶ 21} Nonetheless, we recognize that the Ohio Supreme Court has not decided the precise issue before this court in the present case, specifically whether a plaintiff may recover for the loss-of-chance where the probability of survival or recovery is greater than fifty percent both before and after the alleged negligence and where the only alleged injury is the decreased chance of survival or recovery. We hold that a plaintiff may not recover under such circumstances.
 {¶ 22} As the appellees note, there is no discrete injury in this case. JoJean Southwick was likely to recover whether she had been treated in December 1998 or May 2000. She remained cancer-free as of the time of trial, and her chance of recovery or survival remained in the range of seventy percent to eighty percent. Thus, she failed to demonstrate any likelihood that the asserted negligence of the appellees would result in death, disability, or other clearly defined injury.
 {¶ 23} The Southwicks argue, though, that the diminution of the chance of recovery was itself an injury. They argue that the anguish or other emotional harm resulting from the decreased likelihood of recovery should be compensable, and that to restrict recovery based upon an arbitrary fifty-percent threshold would be inequitable.
 {¶ 24} We are not persuaded by this argument. Although mental suffering and related injuries are compensable in other contexts, damages would be particularly hard to calculate in a case where the chance of recovery does not fall below fifty percent. Damages in such a case would be subject to especially imprecise calculations concerning the actual decrease in the probability of recovery as well as the value to be placed on the resulting anguish or distress. The Southwicks' case is thus fundamentally different from those cases in which the chance of survival is decreased to the extent that death or other discrete harm is substantially caused by a defendant's wrongdoing.
 Conclusion {¶ 25} Accordingly, we hold that the loss-of-chance doctrine does not permit recovery where the plaintiff has a better-than-fifty-percent chance of recovery before and after the defendant's alleged negligence. The assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Gorman J., concurs.
Painter, J., concurs separately.
[1] Bruni v. Tatsumi (1976), 46 Ohio St.2d 127,346 N.E.2d 673, paragraph one of the syllabus.
[2] Strange v. Bethesda Hosp. (Dec. 4, 1996), 1st Dist. No. C-941005, quoting Brinkmoeller v. Wilson (1975),41 Ohio St.2d 223, 325 N.E.2d 233, syllabus.
[3] (1996), 76 Ohio St.3d 483, 1996-Ohio-375, 668 N.E.2d 480.
[4] Id., paragraph one of the syllabus. (Emphasis added).
[5] Id., paragraph two of the syllabus.
[6] 164 Ohio App.3d 80, 2005-Ohio-5554, 841 N.E.2d 350, discretionary appeal allowed, 108 Ohio St.3d 1436, 2006-Ohio-421, 842 N.E.2d 62. See, also, Wilson v. Horton, 1st Dist No. C-40193, 2004-Ohio-6841.
[7] Fehrenbach, supra, at ¶ 43.
[8] Id. at ¶ 42.
[9] 151 Ohio App.3d 763, 2003-Ohio-885, 786 N.E.2d 67, at ¶ 42.
[10] (Nov. 22, 2000), 8th Dist No. 77396.
[11] Roberts, supra, at 485, 1996-Ohio-375, 668 N.E.2d 480, citing Keith, Loss of Chance: A Modern Proportional Approach to Damages in Texas (1992), 44 Baylor L.Rev. 759, 760.
[12] Roberts, supra, at 489, 1996-Ohio-375, 668 N.E.2d 480.
[13] Id., citing King, Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences (1981), 90 Yale L.J. 1353, 1354.