[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 483.]

ROBERTS, APPELLANT, *v*. OHIO PERMANENTE MEDICAL GROUP, INC., ET AL.,
APPELLEES.

[Cite as *Roberts v. Ohio Permanente Med. Group, Inc*., 1996-Ohio-375.]

*Physicians and surgeons—Malpractice—Claim for loss of chance in wrongful death action where decedent had less than fifty-percent chance of survival recognized in Ohio—Requirements necessary to maintain action for loss of chance of recovery or survival—Amount of damages recoverable in loss-of-chance case.*

1. In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death. (*Cooper v. Sisters of Charity of Cincinnati, Inc.* [1971], 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97, overruled.)

2. The amount of damages recoverable by a plaintiff in a loss-of-chance case equals the total sum of damages for the underlying injury or death assessed from the date of the negligent act or omission multiplied by the percentage of the lost chance.

3. To ascertain the amount of damages in a case of lost chance of survival or recovery, the trial court must instruct the trier of fact to consider the expert testimony presented and (1) determine the total amount of damages from the date of the alleged negligent act or omission, including but not limited to lost earnings and loss of consortium; (2) ascertain the percentage of the patient's lost chance of survival or recovery; and (3) multiply that percentage by the total amount of damages.

(No. 95-1042—Submitted May 8, 1996—Decided August 28, 1996.)

APPEAL from the Court of Appeals for Summit County, No. 16913.

_____

**{¶ 1}** On October 26, 1992, plaintiff-appellant, Joan Roberts, executor of the estate of Elaine E. Thomas, filed a wrongful death suit against defendants-appellees, Ohio Permanente Medical Group, Inc., Dipti Shah, M.D., Akron City Hospital and others, for failure to timely diagnose and treat Thomas's lung cancer.[1] Plaintiff alleged that defendants were negligent in causing a seventeen-month delay in the diagnosis and treatment of lung cancer.  An amended complaint added claims for loss of support, services, society and prospective inheritance.

**{¶ 2}** Defendants filed motions for summary judgment and the parties stipulated that, based upon plaintiff's expert witness, plaintiff's decedent would have had a twenty-eight percent chance of survival had proper and timely care been rendered.  Based upon this figure, defendants argued that summary judgment was warranted since plaintiff failed to establish that defendants' negligence had, in probability, proximately caused decedent's death.  Plaintiff, however, relying in part on the loss-of-chance theory of recovery, argued that she had established a triable issue of fact by presenting evidence that defendants' negligence decreased decedent's chance of survival from twenty-eight percent to zero.  The trial court rejected plaintiff's argument and granted defendants' summary judgment motions on authority of *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97.  The court of appeals affirmed.

**{¶ 3}** The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

_____

1. Other named defendants were later voluntarily dismissed.  *Roberts v. Ohio Permanente Medical Group, Inc.*

*A. William Zavarello Co., L.P.A.,* and *A. William Zavarello*, for appellant.

*Gallagher, Sharp, Fulton & Norman, Beverly A. Harris* and *Jay Clinton Rice,* for appellees Ohio Permanente Medical Group, Inc. and Dipti Shah, M.D.

*Roetzel & Andress*, *Richard R. Strong* and *Marlene L. Franklin*, for appellee Akron City Hospital.

*Dinsmore & Shohl, Stephen K. Shaw* and *Sara Simrall Rorer,* urging affirmance for *amicus curiae,* Ohio Association of Civil Trial Attorneys.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A.,* and *Janis L. Small,* urging affirmance for *amicus curiae,* Defense Research Institute.

*Bricker & Eckler, James J. Hughes, Jr.* and *Catherine M. Ballard*, urging affirmance for *amicus curiae*, Ohio Hospital Association and Ohio State Medical Association.

*Spangenberg, Shibley, Lancione & Liber, John G. Lancione* and *Pamela Pantages*, urging reversal for *amicus curiae,* Ohio Academy of Trial Lawyers.

_____

**FRANCIS E. SWEENEY, SR., J.**

{¶ 4} The issue presented in this case is whether Ohio should recognize a claim for loss of chance in a wrongful death action where the decedent had a less than fifty-percent chance of survival.  For the following reasons, we answer this question in the affirmative.

### I.  Overview of Loss-of-Chance Theory

{¶ 5} In medical malpractice cases, the general rule is that the plaintiff must prove causation through medical expert testimony in terms of probability to establish that the injury was, more likely than not, caused by the defendant's negligence.  *Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St.3d 367, 28 OBR 429, 504 N.E.2d 44. However,  the "loss of chance" theory, which compensates an injured plaintiff for his or her diminished chance of recovery or survival, provides an exception to the traditionally strict standard of proving

causation in a medical malpractice action. Instead of being required to prove with reasonable probability that defendant's tortious conduct proximately caused injury or death, the plaintiff, who was already suffering from some disease or disorder at the time the malpractice occurred, can recover for his or her "lost chance" even though the possibility of survival or recovery is less than probable. Keith, Loss of Chance: A Modern Proportional Approach to Damages in Texas (1992), 44 Baylor L.Rev. 759, 760.

{¶ 6} The rationale underlying the loss-of-chance theory is that traditional notions of proximate causation may unjustly deprive a plaintiff of recovery in certain cases even where the physician is blatantly at fault; thus, the requirement of proving causation is relaxed to permit recovery. As explained by one court, when a patient is deprived of a chance for recovery, "the health care professional should not be allowed to come in after the fact and allege that the result was inevitable inasmuch as that person put the patient's chance beyond the possibility of realization. Health care providers should not be given the benefit of the uncertainty created by their own negligent conduct. To hold otherwise would in effect allow [health] care providers to evade liability for their negligent actions or inactions ***." *McKellips v. St. Francis Hosp., Inc.* (Okla.1987), 741 P.2d 467, 474.

{¶ 7} The loss-of-chance theory has its early roots in the decision of *Hicks v. United States* (C.A.4, 1966), 368 F.2d 626. In *Hicks,* the plaintiff's decedent died from an obstruction of the intestine after being misdiagnosed as suffering from gastroenteritis. Expert testimony established that the decedent would have survived given proper treatment. The defendant argued that proximate causation was not established because it was speculative that surgery would have saved the patient's life. The court, in finding that plaintiff had proved proximate causation, stated the following:

"When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise

conjectures as to the measure of the chances that he has put beyond the possibility of realization. *If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable.* Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a certainty that the patient would have lived had she been hospitalized and operated on promptly." (Emphasis added.) *Id.* at 632.

{¶ 8} In addition to the "substantial possibility" rule of *Hicks*, which permits recovery even where there is only a substantial possibility that the result would have been avoided but for the tortious conduct, a number of jurisdictions that have adopted the loss-of-chance theory rely upon 2 Restatement of the Law 2d, Torts (1965), Section 323. This provision provides:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm ***."

{¶ 9} Most of the courts that apply Section 323 hold that once the plaintiff proves that the defendant has increased the risk of harm by depriving the patient of a chance to recover, the case can go to the jury on the issue of causation regardless of whether the plaintiff could prove to a degree of medical probability that the defendant caused the patient's injury or death. See, *e.g., Hamil v. Bashline* (1978), 481 Pa. 256, 273, 392 A.2d 1280, 1288; *Herskovits v. Group Health Coop. of Puget Sound* (1983), 99 Wash.2d 609, 664 P.2d 474. Although the plaintiff still has the burden of persuading the jury by a preponderance of the evidence that defendant brought about the harm plaintiff has suffered, the jury, rather than the medical expert, is given the task of balancing probabilities. *Hamil*, 481 Pa. at 273, 392 P.2d at 1288.

## II. Application of Loss-of-Chance Theory in Ohio: *Cooper v. Sisters of Charity of Cincinnati, Inc.*

{¶ 10} In *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97, Ohio rejected the loss-of-chance theory in favor of adhering to the traditional standard of causation, which requires proof, in terms of probability, that defendant's conduct proximately caused plaintiff's injuries or death.

{¶ 11} In *Cooper,* the plaintiff's decedent was struck by a truck while riding a bicycle. He went to the emergency room, where he complained of a headache and vomited. The physician failed to diagnose a fractured skull and instead released the boy, who died the next day from intracranial hemorrhaging. According to plaintiff's expert, the decedent had a chance of recovery with surgery. However, the expert was unclear as to the exact percentage, stating, "[T]here certainly is a chance and I can't say exactly what--maybe some place around 50%--that he would survive with surgery." (Emphasis omitted.) *Id.* at 247, 56 O.O.2d at 149, 272 N.E.2d at 101. Another expert testified that it would be speculative to attempt to ascertain whether the boy would have survived surgery. This court affirmed the judgment for the defendants on the ground that plaintiff could not establish that defendants' negligence, in probability, proximately caused the death.

{¶ 12} Although we acknowledged that the loss-of-chance theory is attractive and that "[t]he strong intuitive sense of humanity tends to emotionally direct us toward a conclusion that in an action for wrongful death an injured person should be compensated for the loss of any chance for survival, regardless of its remoteness," we nevertheless rejected the loss-of-chance theory for fear that it would cause more injustice than justice. *Id.* at 251-252, 56 O.O.2d at 151, 272 N.E.2d at 103. However, since its inception, the rule in *Cooper* has been criticized as an "all-or-nothing" approach by commentators and courts alike.

6

**{¶ 13}** According to one commentator, "The loss of a chance of achieving a favorable outcome or of avoiding an adverse consequence should be compensable and should be valued appropriately, rather than treated as an all-or-nothing proposition. Preexisting conditions must, of course, be taken into account in valuing the interest destroyed. When those preexisting conditions have not absolutely preordained an adverse outcome, however, the chance of avoiding it should be appropriately compensated even if that chance is not better than even." King, Causation, Valuation, and Chance in Personal Injury Torts Involving Preexisting Conditions and Future Consequences (1981), 90 Yale L.J. 1353, 1354. See, also, *McKellips, supra,* 741 P.2d at 473-474.

**{¶ 14}** In revisiting *Cooper*, we recognize that our court has traditionally acted as the embodiment of justice and fundamental fairness. Rarely does the law present so clear an opportunity to correct an unfair situation as does this case before us. The time has come to discard the traditionally harsh view we previously followed and to join the majority of states that have adopted the loss-of-chance theory. A patient who seeks medical assistance from a professional caregiver has the right to expect proper care and should be compensated for any injury caused by the caregiver's negligence which has reduced his or her chance of survival. Over the years, medical technology has improved and advances have been made in the treatment of many areas of medicine, including cancer. However, these medical strides are meaningless unless early detection is practiced diligently by those in the health care field. Thus, a health care provider should not be insulated from liability where there is expert medical testimony showing that he or she reduced the patient's chances of survival. Unfortunately, under the traditional view, this is precisely the outcome. The innocent patient is the loser while the health care provider escapes liability despite his or her negligence.

**{¶ 15}** We can no longer condone this view and consequently overrule *Cooper v. Sisters of Charity of Cincinnati, Inc., supra.* Instead, we recognize the

loss-of-chance theory and follow the approach set forth in Section 323, Restatement of Torts. Under this view, we hold as follows: In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the health care provider's negligent act or omission increased the risk of harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death. Once this burden is met, the trier of fact may then assess the degree to which the plaintiff's chances of recovery or survival have been decreased and calculate the appropriate measure of damages. The plaintiff is not required to establish the lost chance of recovery or survival in an exact percentage in order for the matter to be submitted to the jury. Instead, the jury is to consider evidence of percentages of the lost chance in the assessment and apportionment of damages. See *McKellips, supra,* 741 P.2d at 475.

### III. Measure of Damages

**{¶ 16}** In ascertaining the amount of damages recoverable, we believe that the most rational approach is the proportional damage approach advocated by Professor King (see 90 Yale L.J., *supra,* at 1381-1387) and applied by a number of courts. See *Delaney v. Cade* (Kan.1994), 873 P.2d 175, 186-187; *McKellips, supra,* 741 P.2d 467. Under this approach, damages are awarded in direct proportion to the chance of survival or recovery that the plaintiff lost. As stated by Professor King, "The defendant should be subject to liability only to the extent that he tortiously contributed to the harm by allowing a preexisting condition to progress or by aggravating or accelerating its harmful effects, or to the extent that he otherwise caused harm in excess of that attributable [solely] to preexisting conditions. The effect of preexisting conditions should depend on the extent to which such conditions affect the present and future value of the interest lost." King, *supra,* at 1360. This approach provides an equitable method of apportioning damages consistent with the degree of fault attributable to the health care provider.

Thus, rather than compensating the plaintiff for *all* damages allowed in a malpractice or wrongful death action, the defendant is liable only for those damages attributable to his percentage of negligence.

{¶ 17} Consequently, the amount of damages recoverable by a plaintiff in a loss-of-chance case equals the total sum of damages for the underlying injury or death assessed from the date of the negligent act or omission multiplied by the percentage of the lost chance. *Delaney, supra,* 255 Kan. at 217-219, 873 P.2d at 187. The *McKellips* court, 741 P.2d at 477, provides the following illustration of how damages should be computed:

"To illustrate the method in a case where the jury determines from the statistical findings combined with the specific facts relevant to the patient [that] the patient originally had a 40% chance of cure and the physician's negligence reduced the chance of cure to 25%, (40% - 25%) 15% represents the patient's loss of survival. If the total amount of damages proved by the evidence is $500,000, the damages caused by defendant is 15% x $500,000 or $75,000."

{¶ 18} To ascertain the amount of damages, the trial court must instruct the trier of fact to consider the expert testimony presented and (1) determine the total amount of damages from the date of the alleged negligent act or omission, including but not limited to lost earnings and loss of consortium; (2) ascertain the percentage of the patient's lost chance of survival or recovery; and (3) multiply that percentage by the total amount of damages.

IV. Conclusion

{¶ 19} We stress that our decision today is limited in its scope and does not alter traditional principles of causation in other areas of tort law. Instead, in overruling *Cooper, supra*, we join the majority of states that have adopted the loss-of-chance theory and recognize the importance of compensating plaintiffs in an amount consistent with the defendant's negligent acts or omissions. In this respect, innocent patients who may have enjoyed a longer health span or better quality of

9

life absent the defendant's wrongdoing are given legal redress in proportion to their loss.

{¶ 20} Accordingly, we reverse the judgment of the court of appeals and remand the matter to the trial court.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, RESNICK and PFEIFER, JJ., concur.

MOYER, C.J., concurs in part and dissents in part.

COOK and STRATTON, JJ., separately dissent.

_____

**MOYER, C. J., concurring in part and dissenting in part.**

{¶ 21} Though I agree with the conclusion of the majority that it is time for Ohio to abandon the all-or-nothing rule of *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St.2d 242, 56 O.O.2d 146, 272 N.E.2d 97, in medical malpractice wrongful death cases, I would not attempt to extend the doctrine to injury cases in which the plaintiff argues that his or her recovery was either slower or less complete than it might have been in the absence of negligence. I believe such an expansion threatens to nullify the advantages of the new doctrine by opening the door to confusion, inequity and excessive litigation.

{¶ 22} The majority has extended the holding of the case beyond the issues specifically raised by the parties on the record, and has unnecessarily broadened its holding to create a new common-law cause of action unrelated to the wrongful death issue before the court. Indeed, the doctrine is referred to in the briefs as the loss of chance *of survival* doctrine.

{¶ 23} The majority attempts to reassure the skeptics by avowing, "our decision today is limited in its scope and does not alter traditional principles of causation in other areas of tort law." That disclaimer is unfortunately refuted by the plain words of paragraph one of the syllabus. The second sentence holds: "It

then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's *injury or* death." (Emphasis added.)

{¶ 24} For the foregoing reasons, I concur in the judgment and dissent from paragraph one of the syllabus and the supporting reference in the opinion.

———————————

**COOK, J., dissenting.**

{¶ 25} The concept embraced by today's decision is superficially appealing. It ameliorates the harshness of the traditional rule that prevents any recovery for an injury unless one can show by a preponderance of the evidence that the wrongful act of the defendant caused the injury. However, by awarding the estate a percentage of the total damages because it cannot show causation by a preponderance of the evidence, the court obviates time-honored principles underlying the right to compensation in tort, including the basic concept of assessing fault.

{¶ 26} Moreover, with the loss-of-chance theory, as recognized in some jurisdictions, the injury suffered and the basis of the claim are the reduced possibility of survival, and not the death itself. The only claim filed by the plaintiff in this case is wrongful death. The majority analysis does not fit within the wrongful death parameters. If the majority decision permits recovery for "*injury or* death" (emphasis added), as is stated in paragraph one of the syllabus, and recognizes injury to the "innocent patients who may have enjoyed a longer health span," then such a claim is not encompassed by R.C. Chapter 2125. The wrongful death statutes provide a cause of action "for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent," not the decedent. R.C. 2125.02(A)(1).

{¶ 27} Despite the sympathetic appeal of its conclusion, I respectfully dissent because the majority decision breaks with sound legal principles.

STRATTON, J., concurs in the foregoing dissenting opinion.

———————————

**STRATTON, J., dissenting.**

{¶ 28} I dissent. *Cooper v. Sisters of Charity of Cincinnati, Inc.* (1971), 27 Ohio St. 2d 242, 56 O.O.2d 146, 272 N.E.2d 97, was soundly grounded in principles of tort and causation and should not be abandoned. In addition, a wrongful death action is a statutory right and does not create a cause of action for "loss of chance." Such a right of recovery should be created by the legislature, not by judicial fiat. Therefore, I respectfully dissent.

COOK, J., concurs in the foregoing dissenting opinion.

———————————