JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Charles Barkley Snodgrass appeals the trial court's granting summary judgment in favor of the City of Mayfield Heights, Ohio and the Mayor of Mayfield Heights, Gregory S. Constable (hereinafter jointly referred to as "City"). He assigns the following error for our review:
 "I. The trial court committed reversible error when, in the face of contrary authority and genuine issues of material fact, it granted summary judgment to Mayfield Heights in Snodgrass's case of illegal document destruction under the Ohio Public Records Act."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 Factual Background {¶ 3} The City of Mayfield Heights has an auxiliary police unit to assist officers in such activities as helping maintain crowd control at parades and the City fairs, watching homes of people on vacation, and supplying extra security at parks and other areas where the public gather. The auxiliary officers were not paid. In order to help the unit keep track of the scheduling of the volunteer officers, the volunteers filled out various forms that were generated internally by the unit. The forms were then used to create monthly schedules. The City did not direct the unit to create the forms and the forms were not listed with the City records custodian as a public record. *Page 2 
 {¶ 4} Snodgrass became a volunteer auxiliary police officer with the City in 1999. In January 2002, Snodgrass became aware that auxiliary officer Gary Warner, had assigned paid side jobs to auxiliary officers who volunteered less time than he did. Paid side jobs consisted of instances when businesses in the City needed assistance in either directing traffic or maintaining security for temporary projects. When a business needed assistance, it called the auxiliary unit to request help. Gary Warner would then locate a volunteer who was available for the job. There was no policy in effect that side jobs were to be assigned according to the amount of hours volunteered.
 {¶ 5} According to Snodgrass, the assignment of paid side jobs created a conflict within the unit because members would not volunteer for events so that they could work the paid side jobs. Snodgrass was also not assigned as many side jobs as the members who volunteered less hours. Snodgrass emailed various complaints regarding this problem to various people within the police department, to no avail. In May 2004, Snodgrass was dismissed from the unit.
 {¶ 6} Two years after he was dismissed, Snodgrass was still upset that paid side jobs were not, according to him, assigned in a fair manner. As a result, on April 3, 2006, he submitted a public records request to Mayfield Heights Police Chief, Joseph Donnelly, for the following documents: (1) City of Mayfield Heights Public Records Retention Policies for the years 2002 and 2003, (2) *Page 3 
Mayfield Heights Auxiliary Unit Daily Activity Logs from 2-1-2002 through 9-30-2003, (3) Mayfield Heights Auxiliary Unit time cards from 2-1-2002 though 9-30-2003, (4) Mayfield Heights Auxiliary Unit Special Events Assignment Sheets from 2-1-2002 through 9-30-2003, (5) Mayfield Heights Auxiliary Unit monthly schedules from 2-1-2002 through 9-30-2003, and (6) all employment records or files for Mayfield Heights Auxiliary Unit Officers serving anytime between 2-1-2002 and 9-30-2003.
 {¶ 7} On April 12, 2006, Assistant City Law Director, L. Bryan Carr, replied to the request by letter stating that the City was in the process of compiling the records requested, but cautioned that some of the documents "may have been" destroyed due to their age. The City eventually produced 1,254 documents consisting of 1,100 documents related to the personal files of Auxiliary Officers, 22 monthly calendars, 131 Auxiliary Unit Daily Activity Logs, and a copy of the City's records retention policy.
 {¶ 8} The City failed to produce any daily facts sheets or time cards for the Auxiliary Unit, and also failed to produce the daily logs from February 2002 through August 2002. These are the documents that are the subject of the instant appeal.
 {¶ 9} On January 18, 2007, Snodgrass filed a public records complaint claiming the City failed to produce requested public records and also claimed *Page 4 
public records were destroyed. He requested a forfeiture of $1,000 for each document destroyed. The City filed an answer to the complaint and a counterclaim, claiming the suit constituted frivolous conduct.[1]
 {¶ 10} On September 4, 2007, the City filed a motion for summary judgment arguing the statute of limitations had run on Snodgrass's claim; he had no evidence that records were destroyed or ever existed; the Auxiliary Unit was not a public office because it consisted of volunteers; Snodgrass was not "aggrieved" because the requested documents would not have supported his claim regarding the assignment of side work; and the records did not constitute public records. On October 10, 2007, the trial court granted the motion without opinion.
 Public Records *Page 5 {¶ 11} In his sole assigned error, Snodgrass contends the trial court erred in granting summary judgment in favor of the City because the statute of limitations had not expired; the City failed to produce all the requested documents; the Auxiliary Unit is a public office, thus the documents were public records; and, he was aggrieved by the City's failure to produce all the requested records.
 Standard of Review {¶ 12} We review an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ. R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the non-moving party.[4] *Page 6 
 {¶ 13} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[5] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[6]
 Legal Analysis {¶ 14} Snodgrass's action was brought pursuant to R.C. 149.351, which provides in pertinent part:
 "(A) All records are the property of the public office concerned and shall not be removed, destroyed, mutilated, transferred, or otherwise damaged or disposed of, in whole or in part, except as provided by law or under the rules adopted by the records commissions * * *.
 "(B) Any person who is aggrieved by the removal, destruction, mutilation, or transfer of, or by other damage to or disposition of a record in violation of division (A) of this section, or by threat of such removal, destruction, mutilation, transfer, or other damage to or disposition of such a record, may commence either or both of the following *Page 7 in the court of common pleas of the county in which division (A) of this section allegedly was violated or is threatened to be violated:
 "(1) A civil action for injunctive relief to compel compliance with division (A) of this section, and to obtain an award of the reasonable attorney's fees incurred by the person in the civil action;
 "(2) A civil action to recover a forfeiture in the amount of one thousand dollars for each violation, and to obtain an award of reasonable attorney's fees incurred by the person in the civil action."
 {¶ 15} At the outset, we conclude the statute of limitations did not expire on Snodgrass's public records claim. It is undisputed that a one-year statute of limitations applies to a public records claim and that the discovery rule applies to such claims.[7] The only dispute in the instant case is when Snodgrass should have discovered there was a problem with recovering some of the documents.
 {¶ 16} In arguing the statute of limitations had expired, the City relies on a letter Snodgrass wrote to Lieutenant Ondercin in March of 2004. In the letter, Snodgrass stated that he believed the Auxiliary Unit was engaged in faulty documentation, and that Gary Warner, the Auxiliary officer in charge of *Page 8 
scheduling paid side jobs, was unfairly assigning the jobs. He concluded his letter by requesting that Lt. Ondercin "ask Mr. Warner for his records to prove this issue."
 {¶ 17} Although Snodgrass referred to "records" in this letter, he did not request the documents for himself, but directed Lt. Ondercin to request the documents from Warner for Ondercin to review; nor did he state specifically which documents Ondercin should request. Therefore, the statute of limitations did not commence to run at the time the letter was sent.
 {¶ 18} We do agree, however, that Snodgrass failed to provide evidence that documents were in fact destroyed. His destruction claim is based solely on a statement contained in a letter from the law director, which cautioned "furthermore, you are requesting documents going back to 2002-2003, which may have been destroyed. The Police Department will let me know shortly." The City never stated that the documents were in fact destroyed. Therefore, Snodgrass's case was based on an unsupported allegation as he has no evidence that any particular record was destroyed. A plaintiff cannot rest upon mere allegations to support his or her claim in opposing a motion for summary judgment.[8] *Page 9 
 {¶ 19} Snodgrass relies heavily on the Supreme Court case of Kish v.Akron[9] However, in that case, there was evidence the requested records were destroyed because the respondents admitted to destroying the records. We have no such evidence in the instant case.
 {¶ 20} Mayfield Heights Police Chief Donnelly testified in his deposition that he was not aware of any documents that were destroyed, but believed the problem was the documents simply did not exist.[10]
Lisa Benedetti, the Records Commission Secretary, stated in her affidavit that "no forms generated by, kept by or retained by the Auxiliary Unit have ever been destroyed."[11]
 {¶ 21} Moreover, Snodgrass admitted in his deposition that some of the documents he requested may not exist because the Auxiliary Unit was run "informally, sloppily, and inconsistently."[12] He also stated that he did not know whether the time cards and daily logs, or any other forms were filled out by the other Auxiliary members.[13] Snodgrass submitted an affidavit contradicting his deposition testimony; however, an affidavit contradicting former deposition *Page 10 
testimony without sufficient explanation of the conflict may not create an issue of fact and must be disregarded.[14] Therefore, without evidence the records were destroyed, Snodgrass's claim for destruction of public records fails. Additionally, the City cannot be ordered to produce documents that do not exist.
 {¶ 22} Further, Snodgrass has failed to show how he was aggrieved by the City's failure to produce the requested records. His grievance with the City concerned the fact Auxiliary members who volunteered less time than him, received paid side jobs. However, Snodgrass admitted that there was no policy in existence linking paid side jobs to the number of hours volunteered. Therefore, these documents that allegedly documented the volunteer hours expended by members would not aid Snodgrass. *Page 11 
 {¶ 23} Snodgrass, relying on Kish v. Akron, [15] maintains that taxpayers are "aggrieved" in general when records they are entitled to review are destroyed. However, in Kish, the issue dealt with records kept and generated by elected officials, not a group consisting of unpaid volunteers as in the instant case.
 {¶ 24} Additionally, the requested documents were created by the group of auxiliary volunteers and not the City. Snodgrass admitted that the City did not direct that the unit create the documents. He admitted the documents were of a temporary nature and used solely for the convenience of the auxiliary unit in creating a schedule for the various volunteers.[16] Accordingly, Snodgrass's assigned error is overruled.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed. *Page 12 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J., SWEENEY, A.J., and CHRISTINE T. McMONAGLE, J., concur.
[1] The counterclaim is still pending; however, the trial court added a clause that there was "no just cause for delay" to the order granting summary judgment. Therefore, we have jurisdiction over this appeal.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[3] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[4] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[6] Id. at 293.
[7] State ex rel. Hunter v. Alliance, 5th Dist. No. 2001CA00101, 2002-Ohio-1130; State ex rel. Delmonte v. Woodmere, Cuyahoga App. No. 83293, 2004-Ohio-2340.
[8] Gockel v. Eble (1994), 98 Ohio App.3d 281; Buckeye Union Ins. Co.v. Consol. Stores Corp. (1990), 68 Ohio App.3d 19.
[9] 109 Ohio St.3d 162, 2006-Ohio-1244.
[10] Donnelly Depo. 74-75, 100, 124.
[11] Benedetti Aff. ¶ 8.
[12] Snodgrass Depo. 127.
[13] Snodgrass Depo. 60, 64.
[14] Byrd v. Smith, 110 Ohio St.3d 24, 2006-Ohio-3455.
[15] Supra.
[16] Snodgrass Depo. 114-116. *Page 1