NATOLI, Admr., Appellant,

v.

MASSILLON COMMUNITY HOSPITAL et al., Appellees.

[Cite as *Natoli v. Massillon Community Hosp.*, 179 Ohio App.3d 783, 2008-Ohio-6258.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2007CA00182.

Decided Dec. 1, 2008.

Amer Cunningham Co., L.P.A., Jack Morrison Jr., and Thomas R. Houlihan, for appellant.

Reminger & Reminger and Stephan C. Kremer;  and Bonezzi Switzer Murphy Polito & Hupp and Donald H. Switzer, for appellees.

DELANEY, Judge.

{¶ 1} Plaintiff-appellant, Virginia Natoli, as the administrator of the estate of her late father, Paul Fortney, appeals from awards of summary judgment granted by the Stark County Court of Common Pleas to defendants-appellees Massillon Community Hospital ("Massillon Hospital") and Emergency Medicine Physicians of Stark County, Ltd. ("EMP").

## STATEMENT OF FACTS AND CASE

{¶ 2} On June 14, 2003, at approximately 6:30 p.m., Mr. Fortney, age 76, went to the emergency room of Massillon Community Hospital ("Massillon Hospital"). He was accompanied by his daughter, Virginia Natoli, and grandson, Paul Marchette.  Fortney previously had his lower right leg amputated due to vascular disease and was in a wheelchair.

{¶ 3} According to Natoli, her father complained of extreme pain in his right side, including the right hip and stump area.[1]  Fortney had previously suffered a stroke and had some expressive aphasia, but was able to communicate his condition to his daughter, who relayed the information to the emergency-room receptionist.  They were instructed to have a seat in the waiting area due to the volume of patients.  Over the next 45 minutes, while in the waiting room, Fortney's condition significantly deteriorated.  He began to groan, hyperventilate, and vomit.  The emergency-room nurses allegedly did not attend to Fortney despite his family's insistence.[2]  He went into cardiac arrest and finally was taken back to the emergency treatment room at 7:22 p.m. and seen by Dr. Jeffrey Yolsten, an emergency-room physician employed by EMP.  The record reflects that there was a contractual agreement between EMP and Massillon Hospital for management of the emergency room.

{¶ 4} Resuscitation efforts were unsuccessful, and Fortney was pronounced dead at 8:27 p.m.  An autopsy was performed, and the cause of death was determined to be a massive "ruptured abdominal aortic aneurysm," a fatal condition if not surgically treated.

---

1.  The record reflects that there is a dispute of fact as to the complaints relayed by Natoli to the emergency-room staff.  Pursuant to Civ.R. 56, we construe the evidence most strongly in the plaintiff's favor, as the nonmoving party.

2.  The record reflects that there is a dispute of fact as to whether Fortney was triaged by a nurse in the waiting area of the emergency room.

{¶ 5} On June 13, 2005, plaintiff filed a wrongful-death-and-survivorship claim against Massillon Hospital, EMP, and Dr. Yolsten.  Plaintiff's complaint alleged that the defendants negligently failed to timely diagnose and treat Fortney's medical condition, resulting in his untimely death.  She further alleged that the defendants were negligent in their operation, staffing, training, and/or regulation of the hospital.

{¶ 6} The defendants timely answered, and discovery progressed.  The case was assigned for jury trial on May 21, 2007.

{¶ 7} Plaintiff identified two experts, Dr. Samuel Kiehl and Dr. David Feldbaum.  Dr. Kiehl, a board-certified emergency-medicine physician, opined in his report, dated November 7, 2005, that both Massillon Hospital and EMP failed to meet the standard of care because no appropriate triage was performed.[3]  For example, there was no evidence of Fortney's vital signs or satisfactory history being taken, or of appropriate observation of Fortney's deteriorating condition.[4]

{¶ 8} Dr. Kiehl also reviewed the contract between EMP and Massillon Hospital in formulating his opinion.[5]  In his report, he further stated that EMP provided the medical director of the emergency room to Massillon Hospital pursuant to the contract.  The medical director was contractually obligated to direct and operate the emergency department, which would include a mechanism whereby patients are appropriately triaged and those with potentially serious illnesses or injury are treated in an appropriate timely way.[6]  According to Dr. Kiehl's report, Massillon Hospital did not have a written triage protocol in 2003.  He opined that both Massillon Hospital and EMP fell beyond the standard of care by failing to ensure that a written triage policy was developed and that it was properly applied.[7]

{¶ 9} Dr. Feldbaum is a board-certified vascular surgeon.  He testified in his deposition that Fortney's chance of survival from the ruptured abdominal aortic aneurysm was less than 50 percent.[8]  He further stated that Fortney was walking and had conversed while in the waiting room.[9]  He further opined that the failure

3.  Kiehl deposition, taken April 21, 2006, Exhibit B.

4.  Id. at ¶ 1.

5.  Id. at p. 9.  See also Kiehl deposition, taken July 31, 2006, p. 8–9.

6.  Id. at Exhibit B, ¶ 2 and 3.

7.  Id. at ¶ 3.

8.  Feldbaum deposition, taken July 26, 2006, at p. 47.

9.  Id.

to adequately evaluate the patient in a reasonable timely manner delayed the eventual ability of Fortney to have a potential operation that had a small chance, at most 10 percent, of saving his life if a surgeon and surgical team were available.[10] He also stated that a patient's past medical history (e.g., heart condition, circulatory condition) would also affect a patient's survivability, but he did not have information on Fortney's prior medical history.

{¶ 10} On May 2, 2006, Dr. Yolsten was voluntarily dismissed from the action.

{¶ 11} On February 26, 2007, EMP filed a motion for summary judgment, claiming that it was entitled to judgment as a matter of law because (1) Fortney had less than a 50 percent chance of survival, and as a result, plaintiff was unable to establish that EMP's negligence proximately caused Mr. Fortney's death, and (2) the expert opinions of Drs. Feldbaum and Kiehl were speculative and unreliable and therefore inadmissible under Evid.R. 703.

{¶ 12} Plaintiff opposed the first prong of the motion by asserting that she was proceeding under the "loss of. chance" doctrine enunciated in 1996 by the Ohio Supreme Court in *Roberts v. Ohio Permanente Med. Group,*[11] which provides an exception to the traditional standard of proximate causation in medical-malpractice actions. In *Roberts,* the court stated: "Instead of being required to prove with reasonable probability that defendant's tortious conduct proximately caused injury or death, the plaintiff, who is already suffering from some disease or disorder at the time the [medical] malpractice occurred, can recover for his or her 'lost chance' even though the possibility of survival or recovery is less than probable." [12]

{¶ 13} EMP conceded in its original motion and reply memorandum that plaintiff's only claim against EMP "is one for a loss of chance of survival." However, EMP still maintained that it was entitled to summary judgment because the plaintiff failed to file a copy of the contract between EMP and Massillon Hospital in response to the motion for summary judgment, and Dr. Kiehl could not recall the specific terms in his deposition; therefore, his testimony is speculative as to EMP's breach of standard of care.

{¶ 14} On April 17, 2007, the trial court issued a decision granting EMP's motion for summary judgment because plaintiff failed to establish that EMP was contractually obligated to create the triage protocol for Massillon Hospital because it failed to produce the contract between EMP and Massillon Hospital.

---

10. Id. at p. 65–66 and 72–74.

11. (1996), 76 Ohio St.3d 483, 668 N.E.2d 480.

12. Id. at 485, 668 N.E.2d 480.

The trial court also ruled that the testimony of Drs. Kiehl and Feldbaum was "speculative and unreliable." The trial court disallowed Dr. Kiehl's testimony because he could not remember what the contract specifically stated. Dr. Feldbaum's testimony was excluded by the trial court because his opinion was based upon an understanding of Fortney's condition that conflicted with testimony of Natoli.

{¶ 15} On May 2, 2007, Massillon Hospital also moved for summary judgment, arguing that plaintiff could not establish a prima facie case of medical malpractice due to the exclusion of Dr. Feldbaum's expert testimony on causation. In response, plaintiff claimed that the exclusion of Dr. Feldbaum's testimony was erroneous because any conflict in the testimony of witnesses goes to weight and credibility of the testimony, not to its admissibility. The trial court thereafter granted summary judgment in favor of Massillon Hospital because of the exclusion of Dr. Feldbaum's testimony.

{¶ 16} Plaintiff now appeals from each of the trial court's entries granting summary judgment to EMP and Massillon Hospital.

{¶ 17} Plaintiff raises two assignments of error for our review:

{¶ 18} "I. The trial court erred in granting summary judgment to Emergency Medicine Physicians of Stark County, Ltd. (Hereinafter 'EMP').

{¶ 19} "II. The trial court erred in granting summary judgment to Massillon Community Hospital (Hereinafter 'Massillon')."

## STANDARD OF REVIEW

{¶ 20} Summary judgment is appropriate only when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."[13] We review a trial court's decision to grant a motion for summary judgment de novo.[14] An appellate court must independently review the record and the inferences that can be drawn from it to determine whether the opposing party can possibly prevail.

## I, II

{¶ 21} We will simultaneously address both plaintiff's assignments of error, because they are interrelated.

---

13. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

14. *Snodgrass v. Mayfield Hts.*, 8th Dist. No. 990643, 2008-Ohio-5095, 2008 WL 4433897, ¶ 12.

{¶ 22} We begin our analysis with the parties' recognition that the plaintiff is pursuing a "loss of chance" theory of proximate causation approved by the Ohio Supreme Court in *Roberts*. "In order to maintain an action for the loss of a less-than-even chance of recovery or survival, the plaintiff must present expert medical testimony showing that the healthcare provider's negligent act or omission increased the risk of harm to the plaintiff. It then becomes a jury question as to whether the defendant's negligence was a cause of the plaintiff's injury or death. Once this burden is met, the trier of fact may then assess the degree to which the plaintiff's chances of recovery or survival have been decreased and calculate the appropriate measure of damages."[15]

{¶ 23} Plaintiff argues that the trial court erred by entering summary judgment because she produced sufficient evidence to demonstrate that a genuine issue of fact exists based on the deposition testimony of Dr. Kiehl and Dr. Feldbaum. Specifically, plaintiff asserts that Dr. Kiehl's testimony established the standard of care owed by defendants, and Dr. Feldbaum testified that Fortney suffered a lost chance of survival as a result of the defendant's failure to timely and properly triage Fortney. Further, plaintiff contends that the trial court improperly disqualified the opinions of Dr. Feldbaum and Dr. Kiehl. In regards to Dr. Feldbaum, she maintains that any factual discrepancies between his testimony and those of other witnesses go to the weight and credibility of the testimony, not to its admissibility. As to Dr. Kiehl, plaintiff contends that he reviewed the contract between EMP and Massillon Hospital, and therefore he "perceived" the data, under Evid.R. 703, and there was no necessity to separately produce the written contract in response to a motion for summary judgment.

{¶ 24} Defendants assert that the trial court properly excluded Dr. Feldbaum's testimony because he engaged in pure speculation as to Fortney's chances of survival because he assumed a surgeon was available to operate and did not know whether an operating-room team was also available, and he stated that Fortney was walking and conversing in the waiting room, contrary to the testimony of Natoli that her father did not walk or talk. Defendants also argue that the written contract between EMP and Massillon Hospital should have been filed with the trial court because Dr. Kiehl's opinion must be based on facts in evidence.

{¶ 25} It has long been held that questions regarding the admissibility of evidence are within the sound discretion of the trial court, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion

---

**15.** *Roberts,* 76 Ohio St.3d at 488, 668 N.E.2d 480.

with attendant material prejudice to a party.[16] "Abuse of discretion" implies that a court acted in "an unreasonable, arbitrary, or unconscionable manner."[17]

{¶ 26} Expert testimony offered in support of or in opposition to summary judgment must comply with Civ.R. 56 as well as the evidence rules governing expert-opinion testimony, Evid.R. 702–705.[18]

{¶ 27} Evid.R. 702(A) requires that an expert's testimony must relate to "matters beyond the knowledge or experience possessed by lay persons." Evid.R. 702(C) provides that the expert witness's testimony must be based upon "scientific, technical, or other specialized information." Evid.R. 703 allows the admission of an expert's opinion or inference when it is based upon facts or data either perceived by him or admitted into evidence.

{¶ 28} With respect to expert opinions, trial courts have been deemed "gatekeepers" tasked with screening such evidence for relevancy and reliability.[19]

{¶ 29} We will first address the issue of Dr. Feldbaum's testimony. For the following reasons, we conclude that the trial court's exclusion of Dr. Feldbaum's testimony was improper.

{¶ 30} The time when Fortney definitively suffered the rupture of his abdominal aortic aneurysm is unclear. Dr. Kiehl opined that a patient with a ruptured abdominal aortic aneurysm who reaches the operating room not in shock and with a stable blood pressure has a greater than 50 percent chance of survival.[20]

{¶ 31} Dr. Feldbaum testified that Fortney had a ten to 40 percent chance of survival if operated on between the time of arrival at the emergency room (6:30 p.m.) and the time he was pronounced dead (8:27 p.m.). At 7:22 p.m., when Fortney was brought back to the emergency room in cardiac arrest, he had less than a ten percent chance of survival. Thus, Dr. Feldbaum's testimony indicates that defendant's failure to properly triage Fortney caused him to suffer as much as a 30 percent loss of chance for recovery. Thus, it seems quite apparent that there is a direct correlation between delay in triage and chance of survival. While the immediate availability of a surgical team has a negative impact on the

16. *Lewis v. Lawyer Chiropractic Clinic*, 4th Dist. No. 98CA2590, 1999 WL 713605, *7; *Strickling v. Joe Behr Plumbing & Heating, Inc.*, 5th Dist. No. 98CA104, 1999 WL 770717, *3.

17. *State ex rel. Sartini v. Yost*, 96 Ohio St.3d 37, 2002-Ohio-3317, 770 N.E.2d 584, at ¶ 21.

18. *Lewis*, 1999 WL 713605, *9.

19. *Valentine v. PPG Industries Inc.*, 158 Ohio App.3d 615, 2004-Ohio-4521, 821 N.E.2d 580, at ¶ 23.

20. Kiehl deposition, taken April 21, 2006, at p. 22.

chance of survival, its unavailability does not eliminate it, had Fortney been timely triaged. We find that such circumstances affect the weight to be given Dr. Feldbaum's testimony, not its admissibility.

{¶ 32} We believe the same can be said as to Dr. Feldbaum's lack of knowledge of Fortney's medical history and physical condition. Although Dr. Feldbaum testified that such information would have an impact on his estimate of lost chance of survival, lack of this information did not necessarily eliminate it. While the credibility of Dr. Feldbaum's opinion is subject to attack on cross-examination because of this lack of information, we find that it does not bar its admissibility. Defendants also argue that Dr. Feldbaum's opinion is inadmissible because it is based, in part, on a distortion of fact regarding Fortney presenting as walking and conversing upon arrival at Massillon Hospital. Dr. Feldbaum's testimony (apparently drawn from the emergency-room records) appears to conflict with the deposition testimony of Natoli. Summary judgment is inappropriate when one witness's statement of material fact conflicts with another's statement. Resolution of the dispute must be left to the trier of fact, who may then assess its impact on the expert's opinion. Summary judgment was therefore not warranted in favor of both defendants, because plaintiff met her burden as the nonmoving party on summary judgment. Specifically, plaintiff presented expert testimony to create a material issue that defendants increased the risk of harm to Fortney.

{¶ 33} We will now turn to the testimony of Dr. Kiehl, which was relevant to the standard of care and breach thereof, although not determinative of the issue of loss of chance. Dr. Kiehl testified that EMP's standard of care and breach were based on the contract. He testified that he had reviewed the contract in formulating his opinion; however, at the time of deposition, the contract was not presented to him by defense counsel as an exhibit.

{¶ 34} Evid.R. 703 states:

{¶ 35} "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶ 36} It is undisputed that Dr. Kiehl's sworn testimony indicates that he reviewed the contract in rendering his opinion. This serves as an adequate foundation for his opinion as he perceived the data under Evid.R. 703. By submitting Dr. Kiehl's deposition testimony in response to summary judgment, a material issue of fact was created as to the liability of defendants. Specifically, Dr. Kiehl testified that EMP and Massillon should have had a triage protocol and the hospital personnel needed to follow that protocol. Dr. Kiehl also testified that the hospital contractually shared triage responsibility with EMP.

{¶ 37} Accordingly, we find that the trial court abused its discretion by excluding the testimony of Drs. Feldbaum and Kiehl on the basis that it was speculative or unreliable.

{¶ 38} As a result, we sustain plaintiff's first and second assignments of error, reverse the judgment of the trial court, and remand this cause to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

Hoffman, P.J., and Wise, J., concur.