[Cite as *DiMarzio v. Norch*, 2021-Ohio-592.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


JAMES DIMARZIO, ET AL.      :      JUDGES:
:      Hon. Craig R. Baldwin, P.J.
     Plaintiffs-Appellants      :      Hon. John W. Wise, J.
:      Hon. Earle E. Wise, Jr., J.
-vs-      :
:
ELENA K. NORCH, M.D., ET AL.      :      Case No. 2020CA00117
:
     Defendants-Appellees      :      O P I N I O N


CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Case No. 2018CV01983


JUDGMENT:      Affirmed


DATE OF JUDGMENT:      March 4, 2021


APPEARANCES:

For Plaintiffs-Appellants      For Defendants-Appellees

SIDNEY N. FREEMAN      BEVERLY A. SANDACZ
12370 Cleveland Avenue, NW      W. BRADFORD LONGBRAKE
P.O. Box 867      DOUGLAS G. LEAK
Uniontown, OH  44685      3737 Embassy Parkway
     Suite 100
     Akron, OH  44333

*Wise, Earle, J.*

{¶ 1} Plaintiffs-Appellants, James DiMarzio and Pamela Ohman-DiMarzio, appeal the July 27, 2020 judgment entry of the Court of Common Pleas of Stark County, Ohio, granting summary judgment to Defendants-Appellees, Elena K. Norch, M.D. and E.K. Norch, Inc.

## FACTS AND PROCEDURAL HISTORY

{¶ 2} Appellee Dr. Norch is appellant James DiMarzio's family physician. Either in 2014 or 2016, appellant advised appellee of a lesion on his left shoulder. During the April 2016 visit, appellee determined the lesion was likely a sebaceous cyst. In November 2016, appellant saw a surgeon, Michael McCormack, M.D., for a consultation regarding the cyst. Dr. McCormack removed the lesion which was found to be a melanoma.

{¶ 3} In March 2018, appellant was diagnosed with a metastatic lesion in his right front parietal lobe. Appellant underwent two procedures, one in March by Mark Hoeprich, M.D., and one in April by Dr. Khayyat. Pathology indicated that the brain tumor was a metastatic lesion from the melanoma.

{¶ 4} On October 11, 2018, appellant, together with his wife, filed a complaint against appellee and her corporation, alleging medical malpractice in failing to "properly diagnose and treat a left arm skin neoplasm" which deviated from the standard of care. As a result, appellant James DiMarzio experienced "great pain, suffering, medical expense, and loss of income."

{¶ 5} On January 2, 2020, appellees filed a motion for summary judgment, claiming appellants failed to establish a prima facie claim for medical negligence. By

judgment entry filed July 27, 2020, the trial court agreed and granted the motion, finding appellants failed to establish causation and the loss of chance doctrine did not apply.

{¶ 6}   Appellants filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶ 7}   "THE TRIAL COURT ERRED, TO THE PREJUDICE OF APPELLANTS, BY GRANTING APPELLEE'S SUMMARY JUDGMENT MOTION, WHEN IT FOUND THAT THE CROSS-EXAMINATION BY DR. NORCH IN DEPOSITION OF PLAINTIFFS' EXPERTS FAILED TO RAISE FACTUAL ISSUES FOR RESOLUTION BY THE JURY AT TRIAL."

I

{¶ 8}   In their sole assignment of error, appellants claim the trial court erred in granting summary judgment to appellees.  We disagree.

{¶ 9}   Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

> Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is

made.  *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 10} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court.  *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 11} As explained by this court in *Leech v. Schumaker,* 5th Dist. Richland No. 15CA56, 2015-Ohio-4444, ¶ 13:

It is well established the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  The standard for granting summary judgment is delineated in *Dresher v. Burt* (1996), 75 Ohio St.3d 280 at 293: " * * * a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims.  The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion the nonmoving party has no evidence to prove its case.  Rather, the moving party must be able to specifically point to some

evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." The record on summary judgment must be viewed in the light most favorable to the opposing party. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150.

{¶ 12} Appellants alleged appellee "failed to properly diagnose and treat a left arm skin neoplasm" which deviated from the standard of care. As a result, appellant James DiMarzio experienced "great pain, suffering, medical expense, and loss of income."

{¶ 13} In *Kester v. Brakel,* 10th Dist. Franklin No. 06AP-253, 2007-Ohio-495, ¶ 26-27, our colleagues from the Tenth District stated the following:

In order to establish medical malpractice, the plaintiff must prove by a preponderance of the evidence that the injury complained of was proximately caused by medical care or treatment that fell below the recognized standards of medical care in the community. *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 131-132. The failure to prove that the

recognized standards of the medical community were not met or to prove that the failure to meet those minimum standards proximately caused the injury is fatal to a claim of medical malpractice.

Because the standards of the medical community are not common knowledge, the general rule is that the plaintiff must prove causation through expert medical testimony. *Roberts v. Ohio Permanente Medical Group, Inc.* (1996), 76 Ohio St.3d 483.

{¶ 14} At some point, appellant advised appellee of a lesion on his left shoulder. Appellant claims it was in 2014 and appellee claims it was in 2016. The trial court noted this factual dispute was not relevant. During the April 2016 visit, appellee determined the lesion was likely a sebaceous cyst and encouraged him to follow up with her if it continued to bother him. Approximately four months later, appellee saw appellant again, and again appellee told him to follow up with her if the cyst was still bothering him.

{¶ 15} In November 2016, appellant saw Dr. McCormack who removed the lesion which was found to be a melanoma.

{¶ 16} In March 2018, appellant was diagnosed with a metastatic lesion in his right front parietal lobe. Appellant underwent two procedures, one in March by Dr. Hoeprich, and one in April by Dr. Khayyat. Pathology indicated that the brain tumor was a metastatic lesion from the melanoma.

{¶ 17} In its July 27, 2020 judgment entry granting summary judgment to appellees, the trial court concluded the following: "Plaintiffs fail to meet the standard necessary to establish a prima facie case that Defendants' negligence proximately

caused the Plaintiffs' injuries. None of the Plaintiffs' three expert witnesses can establish the requisite causal link."

{¶ 18} Appellants presented deposition testimony from three experts, William Hulesch, M.D., Scott McGee, M.D., and Dr. Hoeprich.

{¶ 19} Dr. Hulesch, certified in family practice, testified as to the standard of care, but did not render an opinion on causation. Hulesch depo. at 87-88, 95-96. He specifically withdrew a prior opinion on causation. *Id.* at 95-96.

{¶ 20} Dr. McGee, appellant's treating oncologist, testified he was "given a request to provide an opinion on survival rates based on the tumor stage for cutaneous melanoma." McGee depo. at 9. He did not offer any standard of care opinions, did not opine when appellant became metastatic, and did not testify to causation. *Id.* at 10, 58, 68-69.

{¶ 21} Dr. Hoeprich, appellant's neurosurgeon, testified that generally, earlier diagnosis of a melanoma leads to a better prognosis, but he did not speak to appellant specifically. He did not testify to causation. Hoeprich depo. at 66-69.

{¶ 22} Given the evidence presented for summary judgment purposes, we concur with the trial court's conclusion that appellants failed "to establish a prima facie case that Defendants' negligence proximately caused the Plaintiffs' injuries."

{¶ 23} Appellants further argued "loss of chance doctrine" "which provides an exception to the traditional standard of proximate causation in medical-malpractice actions." *Natoli v. Massillon Community Hospital,* 179 Ohio App.3d 783, 2008-Ohio-6258, 903 N.E.2d 1226, ¶ 12 (5th Dist.). "Instead of being required to prove with reasonable probability that defendant's tortious conduct proximately caused injury or death, the plaintiff, who was already suffering from some disease or disorder at the time

the malpractice occurred, can recover for his or her 'lost chance' even though the possibility of survival or recovery is less than probable." *Roberts v. Ohio Permanente Medical Group, Inc.,* 76 Ohio St.3d 483, 485, 668 N.E.2d 480 (1996). "[T]he loss-of-chance doctrine permits an injured plaintiff to recover for the loss of a less than 50-percent chance of recovery or survival resulting from medical malpractice." *McDermott v. Tweel,* 151 Ohio App.3d 763, 2003-Ohio-885, 786 N.E.2d 67, ¶ 41 (10th Dist.). The doctrine is "not applicable when the plaintiff demonstrates a more than even chance of a full recovery with proper diagnosis and treatment." *Fehrenbach v. O'Malley,* 1st Dist. Hamilton No. C-040128, 2005-Ohio-5554, ¶ 43.

{¶ 24} Dr. McGee, appellant's treating oncologist, testified at the time of the melanoma diagnosis in 2016, appellant's ten year survival rate was 75 percent if the melanoma showed surface ulceration and 83 percent if it did not. McGee depo. at 28-32. He did not know if the melanoma was ulcerated or not. *Id.* at 31.

{¶ 25} In its July 27, 2020 judgment entry, the trial court concluded appellant "had a greater than even chance of survival, which means the loss of chance doctrine is not available to him in order to bypass the traditional method of proving proximate cause in a medical malpractice case."

{¶ 26} Given the evidence presented for summary judgment purposes, we concur with the trial court's conclusion.

{¶ 27} Upon review, we find the trial court did not err in granting summary judgment to appellees.

{¶ 28} The sole assignment of error is denied.

{¶ 29} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Baldwin, P.J. and

Wise, John, J. concur.

EEW/db